SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

### Edan Ben Elazar v. Macrietta Cleaners, Inc. (078079)(A-11-16)

**Argued April 24, 2017 – Decided July 26, 2017**

**LaVECCHIA, J., writing for the Court.**

In this appeal involving the notice provision of the Tort Claims Act (TCA), N.J.S.A. 59:8-1 to -11, the Court considers whether accrual of plaintiffs' claim against the public-entity defendant should have been tolled in accordance the discovery rule. Specifically, the Court considers how discovery-rule principles apply to establish the accrual date of a claim, where circumstances did not appear to implicate a third-party public-entity defendant.

Swan Custom Cleaners was a dry cleaning establishment in the Township of Cranford (Township). In February 1946, the Township's inspector of buildings authorized the dry cleaner to install three underground fuel oil and solvent storage tanks on the Township-owned property behind the cleaners. In 1985, Macrietta Realty purchased Swan and, with related parties (collectively, Macrietta), operated the business for more than twenty years.

In 1988, plaintiffs Edan and Edna Ben Elazar opened an electronics repair business next door to the dry cleaner. Plaintiffs noticed that a chemical odor emanated from the dry cleaning business but did not question it. Since the 1990s, both plaintiffs have experienced medical problems.

In 1998, Macrietta's underground storage tanks were removed, and soil tests revealed contamination. Macrietta notified the New Jersey Department of Environmental Protection (NJDEP), which notified the Township of the contamination. Since then, environmental remediation at the site has been an ongoing effort. On January 14, 2011, Macrietta's environmental consultant sent a letter to the Township's health department, advising that there was an immediate environmental concern at plaintiffs' property. Plaintiffs received a copy of this letter.

On March 11, 2011, the consultant wrote a letter to plaintiffs, explaining that high levels of contaminants discovered on plaintiffs' property created a health risk, and detailing some of the remedial efforts that Macrietta had undertaken since discovering the contamination. Attached to the letter was a map, which indicated the parameters of property that would need to be excavated to remediate environmental damage from the contamination. The excavated property included Macrietta's property and part of the Township's property. The map did not indicate the original location of the removed tanks, but rather depicted the extent of the affected soil to be removed.

On January 12, 2012, Edan Ben Elazar's treating pulmonologist concluded that his illness may be a result of exposure to environmental contaminants. Plaintiffs retained counsel in March 2012, and counsel promptly requested documents from the NJDEP under the Open Public Records Act. The documents that the NJDEP provided on July 3, 2012 showed that the tanks had been located on the Township's property. Plaintiffs' counsel filed a notice of claim with the Township on September 11, 2012.

Plaintiffs commenced this action on September 18, 2012, and amended the complaint in September 2013 to add the Township as a defendant. The trial court granted the Township's motion for summary judgment. The court found that plaintiffs' cause of action accrued, at the latest, by March 11, 2011, and that plaintiffs' notice of claim was untimely under the TCA because it was served beyond the ninety-day period prescribed by N.J.S.A. 59:8-8. The Appellate Division affirmed, and the Court granted plaintiffs' motion for leave to appeal. 228 N.J. 88 (2016).

**HELD:** When a plaintiff is injured by a third party and has no reason to believe that another party, specifically a public entity, is responsible, the discovery rule applies to toll the accrual date that triggers the notice-of-claim requirement. Here, it was error for summary judgment to have been granted to the public-entity defendant based on the record presented, because plaintiffs put forward a reasonable basis to support a determination that the claim against the public entity was diligently pursued and notice of claim was timely filed.

1. Under the TCA, a plaintiff must file a notice of claim with the public entity within ninety days of the accrual of the cause of action. Failure to do so bars the tort claim against the public entity, absent extraordinary circumstances. Before determining whether a claimant has timely filed within the ninety-day period, a court must determine the date on which the claim accrued. (pp. 11-12)

2. In general, a claim accrues on the date on which the underlying tortious act occurred. Whether the discovery rule applies depends on whether the facts presented would alert a reasonable person, exercising ordinary diligence, that he or she was injured due to the fault of another. When a plaintiff knows he has suffered an injury but does not know that it is attributable to the fault of another, the discovery rule tolls the date of accrual as to that unknown responsible party. And, when a plaintiff knows her injury is the fault of another, but is reasonably unaware that a third party may also be responsible, the accrual clock does not begin ticking against the third party until the plaintiff has evidence that reveals his or her possible complicity. In the setting of the Tort Claims Act, the discovery rule applies to the notice requirement as well: when the discovery rule tolls the accrual date, the ninety-day period within which the injured party must file a notice of claim against a public entity is likewise delayed until the injured party learns of the injury or of the third party's responsibility for that injury. (pp. 12-14)

3. In this case, the trial and appellate courts relied on the two letters the environmental consultant sent in early 2011 to conclude that plaintiffs should have been on notice to seek other responsible parties, and should have found the Township's involvement in time to file a notice of claim. The Court disagrees that the record compels that conclusion. Nothing about those communications would have alerted an objectively reasonable person to believe that the contaminants were coming from any source other than Macrietta's establishment. The map that accompanied the March letter and that showed the planned remediation does not reveal where the underground tanks were stored. An objectively reasonable person could believe that the Township was simply another victim of the leaking contaminants. It was Macrietta that notified plaintiffs and others—including the Township and the NJDEP—of the leak, and Macrietta that took steps to address its responsibility for the contaminated soil and other properties affected by the vapors of the leaked materials. The evidence demonstrating that the Township authorized the dry cleaner to place tanks on public property came later through discovery when the Township located and turned over the 1946 memorandum to file stating same. Before the NJDEP released documents in July 2012, this record contained nothing to suggest that a public actor was responsible. (pp. 15-17)

4. Although two decisions of the Court previously dealt with the discovery rule in the context of the accrual of a claim against a public entity, neither addressed circumstances in which plaintiffs learned that they had been injured by another—a private party that had taken steps to assume responsibility for the problem caused by its negligence—but nothing indicated involvement of a public entity. Other cases stand for the proposition that when a plaintiff knows of an injury, and that it is the fault of another, but is reasonably unaware that a third party may also be responsible, the time period for accrual of a claim against the third party is tolled until the plaintiff has evidence that reveals his or her possible complicity. That is the case here. The notice-of-tort-claim requirement does not eliminate normal application of the discovery rule. (pp. 17-22)

5. Plaintiffs have presented facts demonstrating that Edan did not connect his health issues to Macrietta's environmental contaminants until his doctor made that connection for him. That assertion is accepted as true for purposes of summary judgment. Further, plaintiffs' counsel set out communications with the NJDEP, which show diligent pursuit of evidence that finally revealed that the tanks were on Township property. The notice of claim was timely filed after that point in time, and the amendment to the complaint was timely. (pp. 22-24).

6. In the absence of a hearing under Lopez v. Swyer, 62 N.J. 267 (1973), the Court declines to make findings on the issues presented and remands for a hearing. The significance formerly placed on the letters from defendants' environmental consultant should be re-examined based on the information that these documents conveyed. (p. 24)

The judgment of the Appellate Division is **REVERSED**, and the matter is **REMANDED** to the trial court for further proceedings consistent with the Court's opinion.

**CHIEF JUSTICE RABNER and JUSTICES ALBIN, FERNANDEZ-VINA, and SOLOMON, join in JUSTICE LaVECCHIA's opinion. JUSTICES PATTERSON and SOLOMON did not participate.**

EDAN BEN ELAZAR and
EDNA BEN ELAZAR,

    Plaintiffs-Appellants,

        v.

MACRIETTA CLEANERS, INC.,
d/b/a SWAN CUSTOM CLEANERS
and d/b/a COIT SERVICES,
MACRIETTA REALTY, CO., COIT
SERVICES OF CENTRAL NEW
JERSEY INC., ESTATE OF MAX
STAUBER, HENRIETTA STAUBER,
ALAN W. STAUBER, NORMAN A.
SOBIN, STEVEN D. LASKER,
ESTATE OF WILLIAM B. ROCKER,
LYNN SCHONBRAUN and CAROL
RUBIN as personal
representatives of the ESTATE
OF JOAN ROCKER NEWMAN, SWAN
CLEANERS AND DYERS, INC.,
CAROLYNN LAUNDRY, INC.,
TOWNSHIP OF CRANFORD, a New
Jersey municipal corporation,
and John and Jane Does 1-100.

    Defendants-Respondents.

Argued April 24, 2017 – Decided July 26, 2017

On appeal from the Superior Court, Appellate Division.

Stuart J. Lieberman argued the cause for appellants (Lieberman & Blecher, attorneys; Stuart J. Lieberman of counsel and on the brief, and Michael G. Sinkevich, on the brief).

Elizabeth A. Kenny argued the cause for respondent Township of Cranford (McElroy Deutsch Mulvaney & Carpenter, attorneys; Robert P. Donovan, of counsel and on the brief, and Elizabeth A. Kenny on the brief).

JUSTICE LaVECCHIA delivered the opinion of the Court.

This case involves a tort claim against a municipality that was dismissed for failure to comply with the Tort Claims Act requirement that a public-entity defendant be served with a notice of claim "not later than the 90th day after accrual of the cause of action." N.J.S.A. 59:8-8. At issue is whether accrual of plaintiffs' claim against the public-entity defendant should have been tolled in accordance with the discovery rule.

In determining when a cause of action accrues for purposes of that notice requirement, common law principles governing accrual of a tort claim apply. Under traditional equitable principles of our discovery rule, the date of the accrual of a claim -- ordinarily, the date of the injury -- may be tolled when plaintiffs lack knowledge of fault of a third party. The accrual date of a claim may also be tolled when plaintiffs, knowing that one third party is liable, do not know that their injury is also the responsibility of an additional party. In this instance, we consider how discovery-rule principles apply to establish the accrual date of a claim, where circumstances

2

did not appear to implicate a third-party public-entity defendant.

Plaintiffs maintain that this matter was prematurely dismissed without proper accounting for the fact that a private party had taken responsibility for the tort and without proper consideration of how, in these circumstances, that action affects the accrual of plaintiffs' claims against the public entity. We agree with plaintiffs that it was error for summary judgment to have been granted to the public-entity defendant based on the record presented, because plaintiffs put forward a reasonable basis to support a determination that the claim against the public entity was diligently pursued and notice of claim was timely filed. However, because a Lopez[1] hearing was never held, we decline to make findings and instead remand to permit the trial court to conduct a Lopez proceeding as directed in this opinion.

I.

A.

On September 18, 2012, plaintiffs Edan and Edna Ben Elazar commenced an action in tort for personal injuries as well as property damages. The action was filed against private parties. The bodily injury claims filed by both husband and wife were

_____

[1] Lopez v. Swyer, 62 N.J. 267 (1973).

premised on a theory that they were exposed to airborne contamination while working indoors at their electronics repair business on property adjacent to a dry cleaner.

Importantly, for purposes of this appeal, on September 11, 2012, plaintiffs' counsel served the Township of Cranford (Township) with a notice of claim under the Tort Claims Act, dated September 4, 2012; and, one year later, on September 4, 2013, plaintiffs amended their complaint to add the Township as a defendant on their claims for personal injuries.

The Township filed a motion for summary judgment to dismiss on the basis of failure to submit a timely notice of claim under N.J.S.A. 59:8-8. We glean the following facts from the summary judgment record, which includes depositions and documentary evidence produced in discovery conducted thus far. The facts are presented in the light most favorable to plaintiffs, who opposed entry of summary judgment.

B.

The events that give rise to plaintiffs' claims relate to activities associated with the dry cleaner that operated next door to plaintiffs' business.

Swan Custom Cleaners was a dry cleaning establishment located in the Township. The dry cleaner fronts on a street, and there is Township-owned property behind it. In February 1946, the Township's inspector of buildings authorized the dry

4

cleaner to install three underground fuel oil and solvent storage tanks on the Township's property. The authorization is not a recorded document. A copy of the inspector's memorandum to file was produced in discovery. Importantly, the underground tanks stored tetrachloroethylene (also known as percholoroethylene or PCE), a chemical used in the dry cleaning process. In 1985, Macrietta Realty (Macrietta)[2] purchased Swan Custom Cleaners and operated the dry cleaning business for more than twenty years.

In 1988, plaintiffs opened their electronics repair business on property next door to the dry cleaner. Plaintiffs noticed that a chemical odor emanated from the dry cleaning business but did not question it. Since the 1990s, both plaintiffs have experienced medical problems: Edan and Edna have chronic asthma and bronchitis, and Edna has a chronic blood disorder.

In 1998, Macrietta's underground storage tanks were removed, and soil tests at the time revealed contamination in the area surrounding the tanks. Macrietta notified the New Jersey Department of Environmental Protection (NJDEP), and the NJDEP notified the Township of the contamination. Since then,

---

[2] We will refer to Macrietta Realty and its related defendants, both individual and corporate, collectively as Macrietta.

5

environmental remediation at the site has been an ongoing effort. The dry cleaner ceased operations in 2008.

In 2010, as part of the environmental-remediation process, Macrietta retained Viridian Environmental Consultants (Viridian). Viridian sampled the air quality in properties surrounding the dry cleaner, including plaintiffs' electronics store. When the samples revealed high levels of tetrachloroethene, air sampling continued into 2011.

On January 13, 2011, Viridian installed at the electronics store an ultraviolet unit designed to eliminate contaminants. The next day, January 14, Viridian sent a letter to the Township's health department, advising the Township that there was an immediate environmental concern at plaintiffs' property because of the detected levels of contaminants. Plaintiffs received a copy of this letter.

On March 11, 2011, Viridian wrote a letter addressed to plaintiffs, explaining that high levels of contaminants discovered on plaintiffs' property created a health risk. The letter also detailed some of the remedial efforts that Macrietta had undertaken since discovering the contamination. Attached to the letter was a map, which indicated the parameters of property that would need to be excavated to remediate environmental damage from the contamination. The excavated property included Macrietta's property and part of the Township's property. The

6

map did not indicate the original location of the removed tanks, but rather depicted the extent of the affected soil to be removed. Plaintiffs, who are immigrants from Iran and Israel, do not read English; their son, who is proficient in English, read the letters to them.

On January 12, 2012, Edan visited his pulmonologist complaining of a worsening cough. He told his doctor that chemical odors had permeated his shop for years. And, he explained that Viridian had recently conducted tests that reported high levels of air contamination inside his business's building. The doctor told Edan that he believed there was a connection between Edan's asthma and the contaminants that Viridian reported. When deposed, Edan stated that, before his consultation with his doctor, he did not know that the chemical odors he smelled were connected to his health problems. Edan sought a second opinion and, after that doctor agreed that a connection could exist between the chemical contamination and plaintiffs' medical conditions, in March 2012, plaintiffs retained counsel.

Plaintiffs' lawyer promptly filed a request under the Open Public Records Act, N.J.S.A. 47:1A-1 to -13, with the NJDEP seeking "[a]ny and all documents relating to the PCE contamination at the [Swan Cleaner's] site," including information about "testing, notices of violation, remediation,

7

[cleanup], third party impact, correspondence between governmental entities and property owners, correspondence between governmental entities and third parties regarding said cleanup, and any other reports detailing the cleanup of this site." On July 3, 2012, the NJDEP responded to the request by releasing documents that revealed that the dry cleaner's leaking underground storage tanks containing PCE had been located on the Township's property. Contaminated soil was identified on both the Township's and the dry cleaner's property.

As noted, on September 4, 2012, plaintiffs executed a notice of claim that was served on the Township on September 11, 2012.

On September 18, 2012, plaintiffs filed their complaint against Macrietta, alleging, among other claims, personal injuries as a result of exposure to airborne environmental contamination from chemicals used by the dry cleaner that entered plaintiffs' business quarters. Plaintiffs alleged that Macrietta was negligent; that the dry cleaner was a private nuisance; and that the chemical contamination constituted trespass. They sought damages for their bodily injuries and property damages. Within a year of filing their notice of tort claim, on September 4, 2013, plaintiffs amended the complaint to add the Township as a defendant.

In seeking dismissal of the claim on the ground that the notice of claim was untimely, the Township asserted that plaintiffs should have been aware by January 14, 2011 -- when they received the first Viridian letter -- that they had a potential claim against the Township. Alternatively, the Township argued, plaintiffs knew by the second Viridian letter, dated March 11, 2011, that they had a potential claim against the Township. Because plaintiffs failed to file a notice of claim within ninety days of March 11, 2011, the Township asserted that plaintiffs' claim against it was time-barred by the Tort Claims Act's ninety-day notice requirement contained in N.J.S.A. 59:8-8.

In opposition to the motion, plaintiffs argued that their notice of claim was timely because it was filed within ninety days of July 3, 2012 -- when the NJDEP released documents to plaintiffs that revealed that the dry cleaner's tanks were located on Township property. Plaintiffs argued that no reasonable person would expect the dry cleaner's storage tanks to be housed on government property, and that plaintiffs therefore could not reasonably have known that the Tort Claims Act's notice requirement would apply until they learned that the Township bore some responsibility for the contamination that injured plaintiffs.

The trial court determined that plaintiffs' claim accrued, at the latest, in January 2011 when plaintiffs received the first Viridian letter. The court emphasized that, even if a layman would not have expected that the tanks were located on government property, the law imposes a duty to investigate the matter. The court identified January 2011 as the time when plaintiffs should have known that there was a contamination problem on their property; at that point, the court continued, plaintiffs were responsible for investigating the matter to determine the source of the contamination and the responsible parties. The court concluded that, "[h]aving failed to do that in a timely manner and to file their tort claims notice even within that year, their claim is dismissed as it relates to [the Township]."

Plaintiffs appealed, and the Appellate Division affirmed in an unpublished opinion. The panel stated that the record contained "no genuine issue that upon receiving Viridian's March 2011 letter -- if not upon receiving the January 2011 letter -- plaintiffs were aware that the indoor air pollution from the cleaners posed a health risk to them." The panel continued, stating that once plaintiffs received the letters reporting contamination, "it was reasonable for them to conclude not only that they had suffered an injury, but that a third party was at fault." The court noted that "accrual does not depend on

10

identifying the third party at fault," and so plaintiffs' lack of knowledge that the Township might be liable had no impact on the accrual date.  Because plaintiffs failed to file within ninety days of the March 2011 Viridian letter, the panel held that their claim against the Township was barred by the Tort Claims Act.

Plaintiffs filed a motion for leave to appeal with this Court, which we granted.  228 N.J. 88 (2016).

Before this Court, plaintiffs' and the Township's arguments are embellishments on their positions before the trial and appellate courts.

II.

The Tort Claims Act, N.J.S.A. 59:8-1 to -11, establishes that public entities are generally immune from tort liability, except in certain limited circumstances.  Beauchamp v. Amedio, 164 N.J. 111, 115 (2000) ("The overall purpose of the Act was to reestablish the immunity of public entities while coherently ameliorating the harsh results of the doctrine.").  As a prerequisite to proceeding with a tort claim against a public entity, a plaintiff must file a notice of claim within ninety days of the accrual of the cause of action.  N.J.S.A. 59:8-8. Under extraordinary circumstances, and accompanied by a showing that the public entity has not been substantially prejudiced, a plaintiff may file a late notice of claim within one year of the

11

accrual of the claim.  N.J.S.A. 59:8-9.  However, failure to file within ninety days under normal conditions, or within one year under extraordinary circumstances, bars the claimant from bringing the tort claim against the public entity.  N.J.S.A. 59:8-8(a).

Before determining whether a claimant has timely filed within the ninety-day time period, a court must determine the date on which the claim accrued.  McDade v. Siazon, 208 N.J. 463, 475 (2011) ("The first task is always to determine when the claim accrued." (quoting Beauchamp, supra, 164 N.J. at 118)). N.J.S.A. 59:8-1 of the Tort Claims Act governs accrual.  The provision "does not define the date of accrual in any significant way, [but] the comment to that section states that '[i]t is intended that the term accrual of a cause of action shall be defined in accordance with existing law in the private sector.'"  Beauchamp, supra, 164 N.J. at 116 (second alteration in original) (footnote omitted) (quoting Harry A. Margolis & Robert Novack, Claims Against Public Entities, 1972 Task Force Comment to N.J.S.A. 59:8-1 (Gann 2000)).

In general, our law in the private sector holds that a claim accrues on the date on which the underlying tortious act occurred.  Id. at 117.  However, that same common law allows for delay of the legally cognizable date of accrual when the victim is unaware of his injury or does not know that a third party is

12

liable for the injury. Ibid. By operation of the discovery rule, the accrual date is tolled from the date of the tortious act or injury when the injured party either does not know of his injury or does not know that a third party is responsible for the injury. McDade, supra, 208 N.J. at 475; see also Ayers v. Jackson, 106 N.J. 557, 582 (1987) ("Few states follow New Jersey's discovery rule that tolls the statute [of limitations for personal-injury claims] until the victim discovers both the injury and the facts suggesting that a third party may be responsible.").

Whether the discovery rule applies depends on "whether the facts presented would alert a reasonable person, exercising ordinary diligence, that he or she was injured due to the fault of another." Caravaggio v. D'Agostini, 166 N.J. 237, 246 (2001). "The standard is basically an objective one -- whether plaintiff 'knew or should have known' of sufficient facts to start the statute of limitations running." Ibid. (quoting Baird v. Am. Med. Optics, 155 N.J. 54, 72 (1998)). When a plaintiff knows he has "suffered an injury but [does] not know that it is attributable to the fault of another," the discovery rule tolls the date of accrual as to that unknown responsible party. Ibid. And, when a plaintiff knows her injury "is the fault of another, but is reasonably unaware that a third party may also be responsible, the accrual clock does not begin ticking against

13

the third party until the plaintiff has evidence that reveals his or her possible complicity." Id. at 250.

In the setting of the Tort Claims Act, the discovery rule applies to the notice requirement as well:  when the discovery rule tolls the accrual date, the ninety-day period within which the injured party must file a notice of claim against a public entity is likewise delayed until the injured party learns of the injury or of the third party's responsibility for that injury. See McDade, supra, 208 N.J. at 475; see also Beauchamp, supra, 164 N.J. at 122 (explaining that discovery rule tolls ninety-day notice period "[u]ntil the existence of an injury (or, knowledge of the fact that a third party has caused it) is ascertained"). Once the accrual date is established, our case law acknowledges the public-policy reasons for which the Tort Claims Act allows only a short period for service of a notice of claim on the responsible public entity.  See McDade, supra, 208 N.J. at 475-76.

### III.

We are reviewing the grant of summary judgment to the Township.  Summary judgment is appropriate when, viewed in the light most favorable to the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the

14

moving party is entitled to a judgment or order as a matter of law." R. 4:46-2; see Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 528-29 (1995). Our review in this matter is plenary. Bhagat v. Bhagat, 217 N.J. 22, 38 (2014) ("An appellate court reviews an order granting summary judgment in accordance with the same standard as the motion judge.").

This appeal involves application of established principles of the discovery rule. Agreeing with the Township's argument, the trial and appellate courts relied on the two letters from Viridian in early 2011 -- notifying plaintiffs of environmental contamination that affected them and their property -- to conclude that plaintiffs should have been on notice to look for other responsible parties and should have found the Township's involvement in time to file a notice of claim. We disagree that the record compels that conclusion and find that summary judgment was not appropriately entered in favor of the Township.

First, nothing about those communications would have alerted an objectively reasonable person to believe that the contaminants were coming from any source other than Macrietta's establishment. The map that accompanied the March letter to plaintiffs and that showed the planned remediation does not reveal where the underground tanks were stored. The map revealed only that leaked contaminants required excavation of polluted soil on properties owned by the dry cleaner and the

15

Township.  That a leak occurred on one property and affected that property's neighbors does not necessarily mean that any neighbor -- here, the Township -- is at fault.  An objectively reasonable person could believe that the Township was simply another victim of the leaking contaminants.  It was Macrietta that notified plaintiffs and others -- including the Township and the NJDEP -- of the leak, and Macrietta that took steps to address its responsibility for the contaminated soil and other properties affected by the vapors of the leaked materials.  We are not impressed by the map, which lacks the evidentiary value to compel the conclusion that it provided proof or raised suspicion that another entity was responsible.

Indeed, we note that, had plaintiffs searched recorded land documents seeking to learn whether the tanks were on Township property, their search would have come up empty.  The evidence demonstrating that the Township authorized the dry cleaner to place tanks on public property came later through discovery when the Township located and turned over the 1946 memorandum to file stating same.

The point is that plaintiffs were faulted for not being diligent enough in 2011 to think to look for another potentially liable third party and, specifically, for failing to know to do so within the abbreviated timeframe of the Tort Claims Act. Before the NJDEP released documents in July 2012, this record

16

contained nothing to suggest that a public actor was responsible. The responsibility to look for other third parties liable for Macrietta's polluting was overblown in application here.

Two cases of this Court previously dealt with the discovery rule in the context of accrual of a claim against a public entity. Both involved situations in which the plaintiffs knew immediately that one or more public entities were involved.

In Beauchamp, supra, the plaintiff was rear-ended by a New Jersey Transit bus, and she suffered neck, shoulder, and back pain, as well as headaches, as a result. 164 N.J. at 114. The plaintiff did not file a notice of claim within the time limits of the Tort Claims Act because, at first, her injuries did not appear serious enough to support the claim. Ibid. Later -- past the ninety-day period provided in the Tort Claims Act -- it became clear that the plaintiff had suffered permanent injuries. Id. at 115.

Nine months after the accident, and less than two months after discovering that her injuries were permanent, the plaintiff filed a notice of claim with several government entities and also filed a motion to file a late notice of claim under N.J.S.A. 59:8-9. Ibid. The case thus involved the extraordinary-circumstances requirement for allowing a late filing of a notice of claim.

17

The trial court denied the motion, and the Appellate Division affirmed. Ibid. This Court reversed, but we did not hold that the discovery rule applied to toll the accrual date. Id. at 123. Our holding turned on a conclusion that the plaintiff had established extraordinary circumstances to justify a late notice-of-claim filing. Ibid. The Court explained that the plaintiff's accrual date was uncontested because she knew at the time of the car accident that she was injured; in fact, she consulted a doctor and a lawyer shortly after the accident. Id. at 119. The Court rejected the argument that the discovery rule should toll the accrual date of the plaintiff's claim until she knew her injuries were permanent, adhering instead to essential considerations in stating that "[t]he date of accrual of her cause of action was the date of the accident in which she knew she was injured and that a public entity was responsible." Ibid. (emphasis added).

McDade, supra, also involved a tort claim against a public entity in which the plaintiff failed to comply with the notice-of-claim provision of the Tort Claims Act. 208 N.J. at 468. But again, as in Beauchamp, the plaintiff in McDade was on notice that public entities were involved.

In McDade, the plaintiff tripped on a pipe that was protruding from a public sidewalk. Egg Harbor Township owned the sidewalk where the plaintiff slipped and fell, and a

18

different entity, the Egg Harbor Township Municipal Utility Authority (MUA), owned the pipe. Id. at 469. The problem in McDade was that the plaintiff served a notice of claim within ninety days of the accident upon Egg Harbor Township, Atlantic County, and the State of New Jersey, but not the MUA. Id. at 469-70.

The MUA's motion for summary judgment, claiming that the plaintiff's notice of claim was untimely, was denied by the trial court. Id. at 469. The Appellate Division reversed, and this Court affirmed the Appellate Division. Id. at 481. We explained that the discovery rule did not apply to the claims because the plaintiff, having experienced the accident, was immediately aware of the injury when it occurred. Id. at 478. Although "not immediately aware of the true identity of the pipe's owner," the plaintiff was responsible under the discovery rule to exercise reasonable diligence to determine the correct public entity to sue. Id. at 478-79. The plaintiff in McDade, like the plaintiff in Beauchamp, knew immediately that public entities were involved, but did not look diligently enough to identify all public entities. The McDade opinion notes that the plaintiff had failed to conduct an inspection of the pipe, investigate its owner, or search the public record. Id. at 479.

Thus, both Beauchamp and McDade addressed whether discovery-rule applications should result in tolling the accrual

19

date for a claim against a public entity. However, neither application addressed circumstances in which plaintiffs learned that they had been injured by another -- a private party that had taken steps to assume responsibility for the problem caused by its negligence -- but nothing indicated involvement of a public entity.

Our Court discussed a related problem in Caravaggio, supra, when considering the differences between two classes of plaintiffs: "those who do not know that they have been injured and those who know they have suffered an injury but do not know that it is attributable to the fault of another."  166 N.J. at 246.  The Court determined that "'[a] sub-category of the "knowledge of fault" cases is that in which a plaintiff knows she has been injured and knows the injury was the fault of another, but does not know that an additional party was also responsible for her plight.'"  Id. at 248 (quoting Martinez v. Cooper Hosp. Univ. Med. Ctr., 163 N.J. 45, 54 (2000)); see also Gallagher v. Burdette-Tomlin Mem'l Hosp., 163 N.J. 38, 43-44 (2000) (tolling accrual of cause of action where plaintiff belatedly discovered that after-care physicians, in addition to other defendants, were at fault for plaintiffs' injuries); Mancuso v. Neckles, 163 N.J. 26, 36-37 (2000) (holding that where plaintiff brought claim against surgeon but was reasonably unaware of responsibility of radiologist, discovery rule could

20

toll malpractice claim against radiologist); <u>Savage v. Old Bridge-Sayreville Med. Group, P.A.</u>, 134 <u>N.J.</u> 241, 250 (1993) (remanding for <u>Lopez</u> hearing where plaintiff knew of injury and of one likely cause, but not that her physician was also liable).

Thus, in <u>Caravaggio</u>, <u>supra</u>, we reiterated:

> <u>Martinez</u>, <u>Savage</u>, <u>Gallagher</u> and <u>Mancuso</u> reaffirm the basic principle that where a plaintiff knows of an injury and that the injury is due to the fault of another, he or she has a duty to act. However, those cases also stand for the proposition that when a plaintiff knows of an injury, and knows that it is the fault of another, but is reasonably unaware that a third party may also be responsible, the accrual clock does not begin ticking against the third party until the plaintiff has evidence that reveals his or her possible complicity.
>
> [166 <u>N.J.</u> at 249-50.]

That is the case here. This case involves the application of the discovery rule in a context where nothing suggested that a public entity bore any responsibility for plaintiffs' injuries. The notice-of-tort-claim requirement does not eliminate normal application of the discovery rule. When a plaintiff is injured by a third party and has no reason to believe that another party, specifically a public entity, is responsible for the injury, then the discovery rule applies to toll the accrual date for triggering the notice-of-claim requirement. The discovery rule should be applied with

21

reasonableness as to whether a diligent plaintiff would have or should have realized that a public entity was involved at all.[3]

Turning more specifically to the facts as they appear in this summary judgment record, plaintiffs have asserted that not until their receipt of documents from the NJDEP on July 3, 2012 did they learn that the tanks that leaked and caused the contamination were actually located on Township property. The Township does not point to any earlier document revealing that information.

Plaintiffs have presented facts demonstrating that Edan did not connect his health issues to the inhalation of odors from Macrietta's environmental contaminants until his doctor made that connection for him. We accept that assertion as true for purposes of summary judgment. Further, plaintiffs' counsel has painstakingly set out the back-and-forth communications with the NJDEP, which reflect the exact course of events from plaintiffs'

---

[3] To similar effect, our Court applied the extraordinary-circumstances extension for filing a notice of claim in Lowe v. Zarghami, 158 N.J. 606 (1999). We found that the plaintiff faced extraordinary circumstances because there was no evidence that she knew or should have suspected that her doctor was associated with a public entity. Id. at 629-30. Although we determined that the plaintiff's claim accrued in 1995 when she discovered that her medical problems could be associated with the metal clip inside her body and sought to pursue all medical personnel involved, we concluded that her motion to file a late notice of claim within one year of the injury's accrual should allow her claim against the public entity to proceed. Id. at 613, 625.

OPRA request to the NJDEP's release of the documents to counsel on July 3, 2012.[4] Those communications show diligent pursuit of evidence that finally revealed that the tanks were on Township property. The notice of claim was timely filed after that point in time, and the amendment to the complaint was timely, following from the notice of claim that was filed with the Township.

In sum, we are convinced on this record, as it exists thus far, that the Viridian letters from 2011 do not demonstrate that plaintiffs either knew or should have known that a public defendant might have been responsible for their injuries, triggering the exceedingly short time granted for presentation

---

[4] The record reveals the following sequence of events. On March 16, 2012, plaintiffs filed an OPRA request with the NJDEP, seeking "[a]ny and all documents relating to the PCE contamination at the [Swan Cleaner's] site." On March 22, 2012, the NJDEP responded that it had located responsive documents and indicated that retrieving the documents would require a service fee for extraordinary effort and time. Plaintiffs paid the fee. On April 17, 2012, the NJDEP notified plaintiffs that copying the documents would take fifteen to twenty business days. On May 7, 2012, plaintiffs received an invoice for the cost of copying the requested documents, which plaintiffs paid. Thereafter, plaintiffs received "Community Right to Know" forms identifying substances maintained at the dry cleaner. On June 8, 2012, plaintiffs followed up with the NJDEP, asking why no documents were released relating to the active environmental remediation at the site. On June 22, 2012, the NJDEP indicated that it found additional responsive documents. Again, plaintiffs received an invoice for copying fees, which plaintiffs paid on July 3, 2012. Plaintiffs then received documents that revealed that the Township had "allowed the installation of underground storage tanks on Township property contiguous to the dry cleaner property."

23

of the notice of claim required by the Tort Claims Act.  We glean no evident lack of diligence here in failing to earlier detect the Township's responsibility for its role in allowing the tanks that leaked to be on its property.

That said, there has not been a Lopez hearing in this matter and, therefore, we hesitate to make findings that ought to be made in the first instance by the trial court after the opportunity for a hearing on the subject as opposed to a mere summary judgment record.  A remand for such a hearing is required.  However, in that hearing, the significance formerly placed on the Viridian letters should be reexamined in light of our observations of the quality and quantity of information those documents conveyed.

IV.

The judgment of the Appellate Division is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES ALBIN, FERNANDEZ-VINA, and SOLOMON, join in JUSTICE LaVECCHIA's opinion.  JUSTICES PATTERSON and SOLOMON did not participate.

24