**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3412-17T4

LAKESIDE CONSTRUCTION,

    Plaintiff-Appellant,

v.

TOWNSHIP OF SPARTA,
SPARTA TOWNSHIP WATER
UTILITY, PHIL SPALDI, and
MICHAEL SPORTELLI,

    Defendants-Respondents.

_____

Submitted April 29, 2019 – Decided May 9, 2019

Before Judges Sabatino and Susswein.

On appeal from Superior Court of New Jersey, Law Division, Sussex County, Docket No. L-0568-17.

Heymann & Fletcher, attorneys for appellant (Alix Claps, on the briefs).

Keenan & Doris, attorneys for respondents (Timothy R. O'Connor, on the brief).

PER CURIAM

This appeal concerns whether a plaintiff company complied with the ninety-day deadline prescribed by N.J.S.A. 59:8-8 for serving a notice of tort claim upon a defendant public entity. The trial court concluded plaintiff's notice in this case was untimely served more than ninety days after the accrual of its causes of action for negligence against the governmental defendants. Consequently, the court dismissed plaintiff's complaint in accordance with the statute.

Plaintiff argues the trial court misapplied concepts of accrual in calculating the ninety-day deadline. For the reasons that follow, we disagree with plaintiff and affirm the trial court's sound ruling. In doing so, we decline to rely upon unpled and unsubstantiated factual contentions about plaintiff's communications with municipal officials that allegedly delayed the pivotal date of accrual of the negligence claims.

I.

The sparse record reveals these factual allegations and procedural events pertinent to the analysis of the notice issues.

Plaintiff Lakeside Construction is a contractor that was hired to perform various site improvements at a school in Township of Sparta. Among other things, the project required Lakeside to install an underground pipe about 150

feet in length to connect the new school building to the municipal water main. In early November 2016, Lakeside dug a trench for the pipe. It is undisputed that the pipe installation process needed to be inspected and approved by the Township in order to become operational. Lakeside contends it contacted the Township's Director of Utilities, Phil Spaldi, on or about November 4, 2016 to schedule the inspection.

According to Lakeside's complaint, on November 10, 2016, a person named "Tom" (whose last name was not disclosed) appeared at the project site and identified himself as a Township inspector. Lakeside alleges that "Tom" observed the "wet tap" into the water main, and the installation of the first section of the pipe. The putative inspector left the site at approximately 11:00 a.m., and did not return. Lakeside's workers completed installing the pipe that same day.

Several weeks later, on December 29, 2016, Spaldi sent an email[1] to Lakeside, advising Lakeside that it had impermissibly installed the pipe without authorization and without an inspector present. The email informed Lakeside that the water service for the project was not accepted, and that water supply to the project would not be authorized.

---

[1] A copy of the email is not supplied in the record.

A-3412-17T4

Although Lakeside disagreed with Spaldi's finding that the pipe had not been inspected, it was under time pressure to complete the overall project so that the school would receive a certificate of occupancy and the building could be opened promptly. According to the complaint, Lakeside was "forced to install a duplicate water line parallel to the one it had already installed, repeating the work it had done on November 10, 2016." The complaint alleges that Lakewood incurred expenses in installing the duplicative pipe between January 14 and January 30, 2017, amounting to $50,409.71 in materials and labor.

On March 31, 2017, Lakeside served a tort claims notice upon the Township. Lakeside thereafter served a supplemental notice on the Township, utilizing the Township's own form.[2]

In November 2017, Lakeside filed a three-count complaint in the Law Division against the Township, the Township's Water Utility, Spaldi, another Township official by the name of Michael Sportelli, and various fictitious defendants. The complaint alleged: (1) negligent supervision by the Township and the Water Utility in hiring, retaining, and supervising Spaldi and Sportelli

---

[2] Defendants do not contend Lakeside's initial use of a different form violated the statutory requirements. See N.J.S.A. 59:8-6 (allowing local public entities to adopt their own notice forms, subject to certain conditions that are not at issue here).

and in allegedly failing to train them adequately to perform their duties (count one); (2) negligent "carrying out of ministerial functions" by Spaldi and Sportelli "in their supervision of Water Department employees" and in making "untrue assertions regarding the legal and professional standard for the work performed" by Lakeside (count two); and (3) tortious interference by defendants with Lakeside's business practices and relationships (count three).

Defendants moved to dismiss the complaint, arguing that Lakeside's tort claim notice had not been served within the ninety-day period prescribed by N.J.S.A. 59:8-8. Specifically, defendants asserted that any cause of action for negligence accrued on December 29, 2016, the date of Spaldi's email declaring the pipe installation unauthorized, thereby requiring the notice to be served on the Township no later than March 29, 2017. The notice Lakeside served on March 31, 2017 was on the ninety-second day after December 29, which the defense contends was two days late.

Lakeside opposed the dismissal motion, arguing that its claims against the Township and its officials did not accrue until mid-January 2017 when it incurred the expense of installing the duplicate pipe. Lakeside further argued that the Township's ongoing refusal to change its position about the legitimacy

5

of the original November 2016 installation amounted to a continuing tort, which deferred the time of accrual.

After considering the parties' submissions and oral argument, Judge David J. Weaver issued an order and accompanying six-page written opinion on March 8, 2018, granting defendants' motion. In his analysis, Judge Weaver concluded that any cause of action by Lakeside accrued on December 29, 2016, the date of Spaldi's email declaring the original pipe installation to be unauthorized. The judge reasoned that the injury to Lakeside first manifested when it was informed by Spaldi that its original installation was unacceptable. The judge also found that Lakeside's subsequent expenditures on the duplicate pipe did not delay the accrual date. In addition, the judge rejected Lakeside's theory of a continuing tort.

Having concluded that Lakeside's notice was served outside the mandated ninety-day period without leave of court, the judge found the statute required the complaint to be dismissed. This appeal by Lakeside ensued.

II.

A.

The Tort Claims Act, N.J.S.A. 59:8-1 to -11, establishes that public entities and public employees are "generally immune from tort liability, except

in certain limited circumstances." Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 133 (2017). "As a prerequisite to proceeding with a tort claim against a public entity [or one of its employees], a plaintiff must file a notice of claim within ninety days of the accrual of the cause of action." Ibid.; see also N.J.S.A. 59:8-8. A plaintiff's failure to serve the required notice within the prescribed ninety-day period "forever bar[s]" the plaintiff from recovering from the governmental defendants. N.J.S.A. 59:8-8(a).

In N.J.S.A. 59:8-9, the statute contains a limited exception to the ninety-day deadline. The exception applies where the plaintiff has demonstrated that its failure to file a timely notice was justified by "extraordinary circumstances," that the late notice will be served within one year of accrual of the claim, and that the governmental defendants have not been "substantially prejudiced" because of the delay.[3] Ibid.; see also Ben Elazar, 230 N.J. at 133.

Although the Tort Claims Act does not define the term "accrual," the legislative comment to the notice provisions reflects that the term is to be construed in accordance with general concepts of accrual that are utilized in private sector litigation. Ben Elazar, 230 N.J. at 134; see also Beauchamp v.

---

[3] In the present case, Lakeside has not relied upon N.J.S.A. 59:8-9, or argued a theory of extraordinary circumstances.

A-3412-17T4

Amedio, 164 N.J. 111, 116 (2000) (citing Margolis & Novack, Claims Against Public Entities, 1972 Task Force Comment to N.J.S.A. 59:8-1 (2000)). Those general principles instruct that "a claim accrues on the date on which the underlying tortious act occurred." Ben Elazar, 230 N.J. at 134 (citing Beauchamp, 164 N.J. at 117).

The accrual date may be equitably tolled by what is known as the "discovery rule." "By operation of the discovery rule, the accrual date is tolled from the date of the tortious act or injury when the injured party either does not know of his injury or does not know that a third party is responsible for the injury." Ben Elazar, 230 N.J. at 134 (citing McDade v. Siazon, 208 N.J. 463, 475 (2011)).

Here, Lakeside has not invoked the discovery rule. Instead, it argues that the trial court mistakenly treated the December 29, 2016 date of Spaldi's email as the critical point in time when Lakeside's causes of action accrued. As we have already noted, Lakeside maintains, as its primary argument, that the accrual did not occur until no earlier than January 2017, when it expended money to install the duplicate pipe. Based upon that asserted premise, Lakeside's March 31 notice would fall within the ninety-day statutory period.

Alternatively, Lakeside asserts a theory of continuing tort, alleging that defendants' persisting refusal to retract Spaldi's December 29 email represents an ongoing form of negligence by inaction.

Lastly, Lakeside asserts that, in analyzing these issues, the trial court improperly adopted defendants' contention that the original pipe installation was never inspected.

## B.

In considering Lakeside's arguments contesting the dismissal order, we review de novo the trial court's legal conclusions concerning accrual and the timeliness of the tort claims notice. See Smith v. Datla, 451 N.J. Super. 82, 88 (App. Div. 2017) (applying de novo review to legal conclusions made with respect to a ruling on timeliness).

Having conducted that de novo review in light of the record supplied on appeal and the applicable law, we affirm the dismissal of the complaint. We do so substantially for the sound reasons expressed in Judge Weaver's written decision. We add a few amplifying comments.

Fundamentally, we agree with the trial court that Lakeside's tort-based claims against the Township and its officials accrued on December 29, 2016, the date when Spaldi sent his email declaring Lakeside's initial pipe installation

improper and denying Lakeside the authorization to connect the pipe to the municipal water supply. Although that email has not been supplied in the record, no one contends that it was phrased in an ambiguous or tentative manner. Indeed, Lakeside's complaint characterizes the email as a wrongful tortious act, one based upon a false belief that a Township official had not inspected the original pipe connection when it was installed in November 2016.

The trial court did not, as Lakeside argues, adopt defendants' contention that the original pipe was never inspected. Instead, the court focused on the date of the December 29 notice, a date that is critical to the chronology, regardless of the truth of the email's contents or the Township's belief about a lack of inspection. Had the tort claims notice been timely served, the lawsuit would have proceeded and the parties would have litigated their factual dispute over whether the first pipeline had been duly inspected.

We concur with the trial court that the accrual of a claim was not delayed until the time when Lakeside expended funds to install the replacement pipe in mid-January 2017. In Beauchamp, 164 N.J. at 119-21, the Supreme Court analogously held that the date of accrual of a personal injury claim arising from an accident is the date when the accident occurred and when the initial harm was inflicted, even though the plaintiff's bodily injuries were eventually discovered

to be permanent. "Although the full extent of an injury or loss may not be known, N.J.S.A. 59:8-4, the [duty to provide a tort claims] notice is triggered by the occurrence of injury and must be filed in order for a complaint to be lodged against the public entity." Id. at 121 (emphasis added).

The trial court correctly applied these principles in determining that the injury to Lakeside was first sustained when the Township declared on December 29, 2016 that the original pipeline it had already installed in November 2016 was unauthorized and thus unusable. The fact that Lakeside incurred additional expenses in January 2017 to install a duplicate pipeline did not alter the December 29 accrual date. As Judge Weaver rightly found, the January 2017 construction expenses only increased the extent of Lakeside's damages.

We likewise are unpersuaded by Lakeside's invocation of a "continuing tort" theory as a basis to defer the accrual date. As Judge Weaver correctly recognized, the Supreme Court dispelled such an argument in Russo Farms, Inc. v. Vineland Board of Education, 144 N.J. 84, 99 (1996). The plaintiffs in Russo Farms argued that their tort claims against the governmental defendants for flooding damage caused by the construction of a school and an inadequate drainage system constituted a continuing nuisance. Id. at 91. The plaintiffs asserted that their tort claims continued to accrue after the construction was

completed, because defendants failed to take corrective action. Id. at 114. As the Court observed in Russo Farms, the defendants' "mere failure to right a wrong and make [the] plaintiff whole cannot be a continuing wrong which tolls the statute of limitations, for that . . . exception would obliterate the rule." Id. at 114 (quoting Fitzgerald v. Seamans, 553 F.2d 220, 230 (D.C. Cir. 1977)). The fact that the governmental defendants "never corrected the problem does not render the tort continuing." Id. at 114.

We are aware that at the end of the oral argument on defendants' motion to dismiss, Lakeside's counsel represented to the judge that Lakeside, after receiving Spaldi's December 29 email, had engaged in several telephone and email communications with Township officials about the matter. Counsel suggested those communications attempted to resolve what may have been a misunderstanding about the absence of an inspector on the project site in November 2017. As a matter of law under Russo Farms, we have substantial doubts that such communications would suffice to push back the accrual date, absent a tolling agreement negotiated between the parties. A plaintiff should not be allowed to unilaterally extend an accrual date under the Tort Claims Act by grousing to a governmental decision-maker after the allegedly tortious decision was made and announced.

A-3412-17T4

In any event, the supposed post-December 29 communications are not alleged in Lakeside's complaint. Nor were they substantiated to the trial court in any certifications filed in conformity with Rule 1:6-6, or in a request under Rule 4:6-2(e) to supplement the record and convert the dismissal motion to a motion for summary judgment.

We are cognizant that Lakeside missed the ninety-day notice deadline in this case by only two days. We also doubt the municipal defendants suffered any appreciable prejudice from that brief delay. Even so, we also must recognize the strong public policies underlying the notice provisions of the Tort Claims Act. Those policies generally call for the strict enforcement of its terms, subject to the extraordinary circumstances exception in N.J.S.A. 59:8-9, which Lakeside has not invoked. See, e.g., Beauchamp, 164 N.J. at 118 (observing that the Legislature's purpose in adding the "extraordinary circumstances" language in N.J.S.A. 59:8-9 "was to raise the bar for the filing of a late notice from a 'fairly permissive standard' to a 'more demanding' one") (quoting Lowe v. Zarghami, 158 N.J. 606, 625 (1999)).

Moreover, the law also makes clear that filing "a late notice of claim with an entity without leave of court is a nullity and does not constitute substantial compliance with the terms of [N.J.S.A. 59:8-9]." Rogers v. Cape May Cty.

Office of the Pub. Def., 208 N.J. 414, 427 (2011) (alteration in original) (quoting Margolis & Novack, Claims Against Public Entities, comment on N.J.S.A. 59:8-9 (2011)).

C.

In sum, Lakeside has not presented a sufficient legal justification to set aside the trial court's proper application of well-settled principles in enforcing the notice requirements of the Tort Claims Act.

To the extent we have not already addressed them, any other subsidiary arguments raised by Lakeside do not have sufficient merit to warrant discussion in this written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION