**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2357-19

CHARLES TALIAN, an
individual,

     Plaintiff-Respondent,

v.

DR. GREGORY PECK, a
physician, and RUTGERS, THE
STATE UNIVERSITY –
RUTGERS BIOMEDICAL AND
HEALTH SCIENCES,[1]

     Defendants-Appellants,

and

DR. JESSICA CRYSTAL, a
physician, DR. SARA KAHLIL, a
physician, DR. JOSHUA CHIA-
SHIH CHAO, a physician, DR.
NANCY PHAN, a physician, DR.
JUDITH AMOROSA, a physician,
DR. CAROL SAROKHAN, a
physician, DR. SARA

---

[1] Rutgers, the State University of New Jersey – Rutgers Biomedical and Health Sciences was incorrectly pleaded as Robert Wood Johnson Medical School, Rutgers Medical School, and Rutgers University Hospital.

PETTYJOHN, a physician, DR. DEVANG VASANI, a physician, DR. SHERAZ SIDDIQUI, a physician, DR. DAVID WALOR, a physician, MELISSA ASSAEL-DIAZ, a dietician, MOLISHA PATEL, PA, ROBERT WOOD JOHNSON UNIVERSITY HOSPITAL, a business entity, CARE ONE AT EAST BRUNSWICK, a business entity, CLAREMONT REHABILITATION FACILITY AT POINT PLEASANT, t/a CRESTWOOD REHABILITATION CENTER AT POINT PLEASANT, a business entity, and UNIVERSITY RADIOLOGY GROUP, a business entity,

      Defendants,

and

DR. ROBERT SEGAL, a physician, ID CARE,[2] and DR. ROHIT BHALLA, a physician,

      Defendants-Respondents.

_____

Submitted October 21, 2020 – Decided March 15, 2021

Before Judges Alvarez and Mitterhoff.

_____

[2] ID Care was incorrectly pleaded as ID Associates, P.A.

A-2357-19

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-6376-19.

Farkas & Donohue, LLC, attorneys for appellants (David C. Donohue, of counsel; Eileen M. Kavanagh, on the briefs).

Lombardi & Lombardi, P.A., attorney for respondent Charles Talian (Paul R. Garelick, on the brief).

Giblin Combs Schwartz Cunningham & Scarpa attorneys for respondent Rohit Bhalla (Christina M. Scarpa, on the brief).

Rosenberg Jacobs Heller & Fleming, PC, attorneys for respondents Robert Segal and ID Care, join in the brief of respondent Rohit Bhalla.

PER CURIAM

In this medical malpractice action, defendants Dr. Gregory Peck, and Rutgers, the State University of New Jersey – Rutgers Biomedical and Health Sciences (Rutgers), appeal from a January 10, 2020 order denying their motion to dismiss plaintiff Charles Talian's complaint for failure to file a timely notice under the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. Plaintiff's claims arise from treatment he received from Dr. Peck at Robert Wood Johnson University Hospital (RWJUH) during September 2017. Plaintiff sent his notice of claim to relevant defendants in September 2019, because he did not learn that Dr. Peck may have been at fault until three months prior (July 2019),

3 <span>A-2357-19</span>

when plaintiff's friend, a medical professional, expressed concern about the September 2017 treatment. In denying the motion to dismiss, Judge James F. Hyland applied the discovery rule and found that a reasonable person in plaintiff's position would not have recognized that Dr. Peck may have been at fault for his injuries. We affirm.

We discern the following facts from the record. On September 11, 2017, plaintiff was admitted to RWJUH and diagnosed with acute right leg cellulitis. Dr. Peck performed drainage procedures and debridement to treat the condition. During plaintiff's hospitalization, on or around September 15, 2017, plaintiff was also diagnosed with colonic obstruction. As a result, Dr. Peck and his surgical team performed an exploratory laparotomy, lysis of adhesions, and subtotal colectomy and creation of end ileostomy. Plaintiff was discharged from RWJUH on September 21, 2017 and was readmitted on or around September 25, 2017. He was again discharged from RWJUH on October 14, 2017.

Immediately thereafter, plaintiff received almost continuous treatment from various wound care centers and rehabilitation facilities for about two years. He is still receiving treatment for his injuries.[3]

---

[3] The names of these facilities and the dates on which he treated at each facility are not relevant to this appeal.

A-2357-19

Meanwhile, on July 22, 2019, plaintiff had lunch with his brother and a friend, Dr. Roy Michael Stefanik. During the lunch, plaintiff told Dr. Stefanik about the abdominal problems he developed during his stay at RWJUH in September 2017, and "Dr. Stefanik seemed concerned by what [plaintiff] had explained to him regarding [his] abdominal condition and [his] ultimately undergoing a colostomy." Plaintiff became concerned and asked Dr. Stefanik to write him a letter expressing his own concerns about plaintiff's treatment.

In a letter dated September 2, 2019, Dr. Stefanik detailed the extent of his discussion with plaintiff about plaintiff's abdominal problems. He wrote that when plaintiff told him about the surgery to treat an abdominal complication, such as a bowel infarction or obstruction, that developed after leg debridement, he told plaintiff he "thought it was strange that no radiologic studies were done in an effort to diagnose the abdominal problem medically before the surgery." Further, he "informed [plaintiff about] a phone app called UpToDate that provides detailed medical information for clinical diagnosis and treatment of various conditions." Upon searching UpToDate for post-surgical complications following a leg debridement, Dr. Stefanik found that the application identified the standard diagnostic approach as placing a nasogastric tube and conducting a CT scan of the abdomen without contrast before performing abdominal surgery.

A-2357-19

Plaintiff certified that before speaking with Dr. Stefanik in July 2019, he never had reason to suspect Dr. Peck had injured him, and no medical professional had ever indicated that his conditions were caused by another person. After reading Dr. Stefanik's letter, he believed for the first time that he was the victim of medical malpractice. Consequently, on September 5, 2019, he retained counsel which led to the filing of the TCA notice of claim and commencement of this malpractice action.

In denying Dr. Peck and Rutgers' motion to dismiss, Judge Hyland found persuasive plaintiff's assertion that "[a] reasonable person in his position exercising ordinary diligence would not have recognized that his injuries were [caused by] . . . another until he met with Dr. . . . Stefani[k,]" given that plaintiff was receiving treatment for two consecutive years after the alleged malpractice. At the earliest, plaintiff had notice of a possible cause of action when he met with Dr. Stefanik on July 22, 2019. Therefore, plaintiff's notice of claim, which was received on September 11, 2019, was timely.

On appeal, defendants present the following arguments for our review:[4]

POINT I

---

[4] Plaintiff contends in his brief that the appeal should be dismissed as interlocutory; however, no cross-appeal was filed raising that issue and we will not address it. See Crystal Ice-Bridgeton, LLC v. City of Bridgeton, 428 N.J. Super. 576, 579 (App. Div. 2012).

6

THE TRIAL COURT ABUSED ITS DISCRETION BY IMPROPERLY ALLOWING PLAINTIFF TO INVOKE THE DISCOVERY RULE AS A SUBSTITUTE FOR COMPLIANCE WITH THE PROCEDURAL AND SUBSTANTIVE REQUIREMENTS SET FORTH IN [N.J.S.A.] 59:8-9 (Raised Below)

A. The Discovery Rule was not Available to Toll Plaintiff's Claims in the Absence of a Motion for Leave to File Late Notice of Claim.
B. The Trial Court Erroneously Found the Discovery Rule Tolled Plaintiff's Claim in the Absence of No Investigations.

POINT II

THE TRIAL COURT ERRED IN FINDING THE DISCOVERY
RULE TOLLED THE DATE OF ACCRUAL UNTIL JULY 2019 WHEN PLAINTIFF SPOKE TO HIS PHYSICIAN FRIEND.
(Raised Below)

POINT III

THE TRIAL COURT ERRED IN FAILING TO FIND [N.J.S.A.] 59:8-9 BARRED PLAINTIFF'S CLAIM (Raised Below).

The issue of the accrual date of a TCA claim is a matter of law to be determined by the courts. See Beauchamp v. Amadio, 164 N.J. 111, 117-19 (2000) (explaining the "sequential analysis" courts must undertake in analyzing TCA notice issues). Accordingly, Judge Hyland's decision is subject to de novo

7

review.  See Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.").

"The [TCA] establishes that public entities are generally immune from tort liability, except in certain limited circumstances."  Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 133 (2017) (citation omitted).  When a claimant is permitted to file a tort claim against a public entity, he or she must first file a notice of claim with the public entity within ninety days of accrual of the cause of action.  N.J.S.A 59:8-8.  The claimant must then wait a minimum of six months before commencing an action in the appropriate court but must do so before two years have passed since the accrual of the claim.  Ibid.

To determine whether a claimant filed a timely notice of claim, courts undertake a sequential analysis:

> The first task is always to determine when the claim accrued.  The discovery rule is part and parcel of such an inquiry because it can toll the date of accrual.  Once the date of accrual is ascertained, the next task is to determine whether a notice of claim was filed within ninety days.  If not, the third task is to decide whether extraordinary circumstances exist justifying a late notice.
>
> [Beauchamp, 164 N.J. at 118-19 (emphasis added).]

A-2357-19

The TCA does not define the time at which a cause of action accrues, but "[g]enerally, in the case of tortious conduct resulting in injury, the date of accrual will be the date of the incident on which the negligent act or omission took place." Id. at 117 (citing Fuller v. Rutgers, State Univ., 154 N.J. Super. 420, 423 (App. Div. 1977); Torres v. Jersey City Med. Ctr., 140 N.J. Super. 323, 326 (Law Div. 1976)). An exception to this standard is the discovery rule, which applies "where the victim either is unaware that he [or she] has been injured or, although aware of an injury, does not know that a third party is responsible." Beauchamp, 164 N.J. at 117. When applying the discovery rule, the proper inquiry is "whether the facts presented would alert a reasonable person, exercising ordinary diligence, that he or she was injured due to the fault of another." McDade v. Siazon, 208 N.J. 463, 475 (2011) (quoting Caravaggio v. D'Agostini, 166 N.J. 237, 240 (2001)).

In this case, Judge Hyland found that plaintiff first discovered that Dr. Peck might be at fault for his injuries on July 22, 2019, when he discussed his medical problems with Dr. Stefanik. The record supports this finding and we discern no basis to disturb it. Plaintiff received continuous treatment for almost two years between his September 2017 hospitalization and his lunch with Dr. Stefanik. No doctor or health care professional treating plaintiff during the

9

preceding two years alerted him to the possibility that Dr. Peck was at fault for his continued complications, and there are no other facts in the record suggesting plaintiff should have suspected Dr. Peck was at fault, as to give rise to any duty to investigate. See ibid.

In that regard, there are no facts indicating that plaintiff should have questioned Dr. Peck's diagnosis and treatment. The mere fact that plaintiff was admitted to RWJUH for one condition and subsequently underwent treatment for an additional condition would not necessarily cause a reasonable person to suspect that his or her physician committed malpractice. A patient could be treated for a second condition and still receive appropriate treatment and care. Dr. Peck and Rutgers' position presumes that all patients must second guess medical treatment, even if no facts suggest that malpractice occurred.

Contrary to Dr. Peck and Rutgers' contention, the fact that plaintiff's claim is based on facts of which he was aware in September 2017 is inconsequential. See Ben Elazar, 230 N.J. at 134 ("By operation of the discovery rule, the accrual date is tolled from the date of the tortious act or injury when the injured party either does not know of his injury or does not know that a third party is responsible for the injury." (emphasis added) (citing McDade, 208 N.J. at 475)). Plaintiff certified that from the time he was initially hospitalized at RWJUH

through the present, he has been "fighting for [his] life." He was only able to realize the possibility of malpractice during the short time he was not receiving treatment and was able to meet a friend for lunch.

We reject defendants' claim that the judge "confused" the law governing the discovery rule with the law governing filing a late notice of claim. That is so because the former dictates the date of a claim's accrual, whereas the latter deals with claims that have indisputably accrued, but a litigant asserts some reason to excuse an untimely filing. See Beauchamp, 164 N.J. at 118-19.

Dr. Peck and Rutgers' attempt to compare the present circumstances to those in McDade is unpersuasive. In McDade, the plaintiff was injured by a pipe on a public sidewalk but did not serve a notice of claim on the correct defendant until seven months later, after the entities upon which he had served his initial notice of claim identified the correct defendant. 208 N.J. at 469-70. The Court explained that the discovery rule did not toll the accrual of the plaintiff's claims because at the time he was injured, he knew that the owner of the pipe might be at fault for his injury. Id. at 478. In the present matter, there is no indication that plaintiff knew his injuries were caused by Dr. Peck or any other medical provider; rather, it is likely that he thought the complications he suffered were the result of his own health issues.

A-2357-19

Finally, we reject defendants' contention that the judge erred in denying defendant's motion to dismiss without requiring plaintiff to file a motion to file a late notice of claim. In this case, the judge affixed the accrual date as July 22, 2019. Therefore, plaintiff's September 11, 2019 notice of claim was timely filed, obviating the need to file a motion.

Although plaintiff's notice of claim was timely, he did not comply with the TCA's six-month waiting period before filing his complaint in the Law Division. The 1972 Task Force comment to N.J.S.A. 59:8-3 explains,

> The purpose of the claims notification requirement in this Chapter is two-fold: (a) to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit; (b) to provide the public entity with prompt notification of a claim in order to adequately investigate the facts and prepare a defense.
>
> [Margolis & Novack, Claims Against Public Entities, 1972 Task Force cmt. to N.J.S.A. 59:8-3 (2020).]

However, N.J.S.A. 59:8-8 does not forever bar a plaintiff from recovering if he or she does not comply with the six-month waiting period, as it does if the plaintiff does not comply with the ninety-day notice requirement or the two-year statute of limitations. Guerrero v. City of Newark, 216 N.J. Super. 66, 74 (App. Div. 1987) ("[A]lthough the statute mandates that the claimant wait six months

12

from the date that notice is received before filing suit, the failure to do so was not intended permanently to bar one from bringing an action.").

Plaintiff filed his complaint on September 10, 2019, the day after he sent his notice of claim.[5]  While Dr. Peck and Rutgers surely did not have the opportunity at that time to conduct a proper administrative review and adequately investigate the facts forming the basis for plaintiff's claim, by this time, they have had sufficient time to investigate plaintiff's claims, work toward a settlement, and identify any prejudice they might suffer from plaintiff's premature filing.  They have yet to specify any genuine concerns, as during oral argument, when asked what prejudice they might suffer, they merely speculated that witnesses might not be available or might not recall pertinent facts, and they have not presented any new concerns in their appellate briefs.  Moreover, Judge Hyland could have dismissed plaintiff's complaint without prejudice, but plaintiff could have easily refiled his complaint after waiting the statutorily mandated six-month period.  See id. at 74-75.  Dismissal without prejudice "would have little impact other than consuming the parties' and court's resources."  Id. at 75.

---

[5]  It appears that plaintiff mistakenly understood N.J.S.A. 59:8-8(b) to mean that he was required to file the complaint within two years of the injury occurring, rather than within two years after the accrual of his claim.

We conclude that the record supports Judge Hyland's findings that plaintiff's cause of action did not accrue until July 22, 2019, and that the premature filing of plaintiff's complaint did not prejudice Dr. Peck or Rutgers. Therefore, we see no basis for reversal.

Considering our affirmance, Dr. Bhalla's cross-appeal to preserve his crossclaim for contribution is moot. See Redd v. Bowman, 223 N.J. 87, 104 (2015) ("An issue is 'moot when our decision sought in a matter, when rendered, can have no practical effect on the existing controversy.'" (quoting Deutsche Bank Nat'l Tr. Co. v. Mitchell, 422 N.J. Super. 214, 221-22 (App. Div. 2011)). Dr. Peck and Rutgers remain in the action below, so the other defendants are still permitted to assert crossclaims against them.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14