**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1380-20

JONATHAN MCCONNACHIE,
as administrator ad prosequendum
and general administrator of the
estate of CHRISTINE A.
MCCONNACHIE, individually,

     Plaintiff,

v.

BRIDGEWATER-RARITAN
REGIONAL SCHOOL
DISTRICT,

     Defendant/Third-Party
     Plaintiff-Appellant,

and

ROBERT MOSER,

     Defendant/Third-Party
     Plaintiff,

v.

BOROUGH OF SOMERVILLE,

    Defendant/Third-Party
    Respondent.

_____

Argued February 16, 2022 – Decided July 8, 2022

Before Judges Hoffman, Whipple and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-0394-19.

Roshan D. Shah argued the cause for appellant (Anderson & Shah, LLC, attorneys; Roshan D. Shah, of counsel and on the briefs; Erin Donegan, on the briefs).

Jacob A. Papay, Jr. argued the cause for respondent (Gebhardt & Kiefer, PC, attorneys; Jacob A. Papay, Jr., on the brief).

PER CURIAM

This appeal concerns a failure to comply with the notice requirements of the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. Defendant/third-party plaintiff Bridgewater-Raritan Regional Board of Education (the Board) appeals from the Law Division order that 1) granted the summary judgment dismissal of the claim for contribution the Board had filed against third-party defendant Borough of Somerville (the Borough or Somerville) and 2) barred the Board from seeking to have the jury consider the

liability of the Borough or allocate fault to the Borough. After the motion court entered the orders under review, the Board reached a settlement with plaintiff, as reflected in a final consent judgment entered on January 5, 2021, entering judgment against the Board for $4.25 million. The Board also appeals from the order denying reconsideration of these rulings.

For the reasons that follow, we affirm the order of dismissal. In addition, we conclude the Board's settlement with plaintiff has rendered moot the Board's challenge of the motion court's decision to bar the Board from seeking to have the jury consider the liability of the Borough or allocate fault to the Borough.

I.

On July 31, 2018, at approximately 9:00 a.m., Christine A. McConnachie entered the crosswalk at the intersection of Grove Street and Main Street in Somerville. At the same time, defendant Robert W. Moser took a wide left turn and struck Ms. McConnachie in the crosswalk, inflicting fatal injuries. Moser, a maintenance employee for the Board, was driving the van. He had just picked up parts from a local hardware store and was on his way to the Adamsville Elementary School to conduct a fire alarm inspection. Moser recounted driving at a low rate of speed, approximately fourteen to fifteen

miles per hour. He explained that he stayed close to the middle of the road because he was worried about someone exiting one of the several parked cars in front of the Somerset Hotel, which sits at the corner of Grove Street and Main Street.

At the subject intersection, the Somerset County Administration Building and the Somerset County Superior Court sit adjacent to Grove Street, while rows of restaurants line Main Street. The Borough owns Grove Street, and the State of New Jersey owns Main Street.

On the day of the subject accident, a pedestrian crosswalk ran across Grove Street; adjacent to the crosswalk, a painted yellow diagonal crosshatch narrowed to solid double yellow lines about thirty feet from the crosswalk. Before February 2007, a raised concrete island occupied the area where the painted yellow median area exists today. The island served to divert approaching vehicles and channel them into their appropriate lanes of travel.

In February 2007, the Borough authorized the removal of the concrete island to accommodate the Tour de Somerville bicycle race. After removing the concrete island, the Borough replaced it with yellow-painted road markings and an array of yellow plastic pylons – four-foot high – bolted around the perimeter.

4

According to the Borough, the purpose of these pylons was to "channeliz[e]" and "guide" vehicles away from the median area so they would stay in their own lanes; in addition, the pylons would force drivers to "cut the turn more sharply." Prior to the subject accident, the pylons were removed; however, the Borough disclaims any knowledge of when or why this occurred. Also prior to the subject accident, three other pedestrian-vehicle accidents occurred at the intersection of Grove Street and Main Street.

In May 2017, the Borough submitted a "Problem Statement" to the New Jersey Department of Transportation (NJDOT) expressing serious safety concerns regarding the intersection. In its submission to NJDOT, the Borough stated: "The Borough of Somerville has great concern for pedestrian safety at the intersection of East Main St (Rt 28), Grove Street and Warren Street." The statement noted that "[t]urn radii into and from Grove Street is a problem for those trying to cross, as vehicles do not slow down as they make these turns." The Borough then cited an incident where a retired state trooper walking in the crosswalk sustained serious injuries when struck by a vehicle, albeit one turning right. The Borough stated that "[t]his problem location has a high priority within the Borough . . . due to the increase in pedestrian traffic within this area brought about by the Borough's aggressive redevelopment efforts,"

and that it "believe[d] something must be done to prevent a fatality in the future."

Soon after the accident, the Borough's police officers arrived on scene and investigated. The police generated a crash investigation report, obtained video of the accident from the Somerset County Jail's surveillance system, took over 100 photographs, and obtained a recorded statement from Moser.

Two days after the accident, on August 2, 2018, Anthony Fernandez, a claims examiner with the New Jersey Schools Insurance Group (NJSIG), the Board's insurer, sent a letter to the Borough identifying Christine McConnachie as the fatally injured victim of the accident and July 31, 2018, as the accident date. The letter stated:

> Please be advised that NJSIG is the general liability insurance carrier for the above member. NJSIG has been placed on notice of an injury to the above claimant which occurred on the above loss date. The incident resulted in a fatality to the claimant. According to our investigation into this case, the area in question is a well-known high volume pedestrian area with many prior incidents including fatalities. Therefore, please forward this notice to your insurance company and have them contact me upon receipt to discuss the matter.

The record indicates the Borough received this letter because, on August 9, 2018, Fernandez received a telephone call from Mary Ann Maitilasso of the

6

Statewide Insurance Fund, informing him that she was calling on the Borough's behalf. Maitilasso provided Fernandez with her claims investigation file number and told him that she would follow up with him, after conducting her investigation. Fernandez did not hear from Maitilasso again.

Plaintiff served a TCA notice of claim on the Board, dated August 20, 2018; however, plaintiff did not serve a notice of claim upon the Borough. Thereafter, the Board did not serve a notice of claim upon the Borough. Nor did the Board seek leave to serve a late notice of claim within one year from the date of the accident, or within one year from the date served with plaintiff's complaint.

On March 27, 2019, plaintiff Jonathan McConnachie, administrator ad prosequendum and general administrator of the estate of Christine A. McConnachie, filed a wrongful death and survival action against the Board and Moser (defendants). On May 23, 2019, defendants filed their answer to plaintiff's complaint, and on July 8, 2019, defendants filed a third-party complaint for contribution against the Borough, alleging the subject intersection constituted a dangerous condition.

At the discovery deadline for providing expert reports, the Board supplied a report from John Zolock, Ph.D., PE, an accident reconstructionist.

A mechanical engineer by training, Dr. Zolock reconstructed the accident and examined whether the Borough's negligence played a contributory role. Dr. Zolock opined, to a reasonable degree of engineering and scientific certainty, that the subject accident would have been avoided, if the traffic pylons remained in place.

On May 21, 2020, the Borough moved for the summary judgment dismissal of defendants' third-party complaint based on defendants' failure to serve a TCA notice of claim. On June 9, 2020, plaintiffs filed a cross-motion for summary judgment, seeking to preclude the Board from apportioning liability to the Borough at trial. Plaintiffs argued that the Board cannot seek an apportionment because: 1) the Board did not serve the Borough with a timely notice of claim; 2) the Board cannot establish a prima facie dangerous condition claim against the Borough under N.J.S.A. 59:4-2; and 3) the Borough is immune from liability under N.J.S.A. 59:4-5.

After hearing oral argument, the motion court granted summary judgment to the Borough and entered an order dismissing defendants' third-party complaint with prejudice. In addition, the motion court rejected the Board's argument that, notwithstanding its failure to file a notice of claim and its dismissal from the lawsuit as a defendant, the court should still include the

8

Borough on the jury verdict sheet for purposes of allocation of fault. The Board based its argument upon the principle of law that "apportionment of fault . . . does not turn on whether the plaintiff is in a position to receive damages from the defendant at issue" and that "the statutory constraints on a plaintiff's ability to recover from a given defendant do not automatically preclude apportionment of fault to that defendant notwithstanding the defendant's discharged liability." Town of Kearny v. Brandt, 214 N.J. 76, 103 (2013). The motion court rejected this argument, interpreting Jones v. Morey's Pier, Inc., 230 N.J. 132 (2017) as requiring a notice of tort claim before a claim of negligence, whether direct, for indemnification, or contribution, can be asserted against a public entity.

In its statement of reasons, the motion court held that defendants did not file a timely notice of tort claim. The court further determined that the letter sent by the Borough's insurance carrier after the accident and the subsequent phone call from the Board's insurance carrier, did not substantially comply with N.J.S.A. 59:8-8. In addition, the court found that no "defect" existed in the Borough's property under N.J.S.A. 59:4-2, concluding that painted yellow lines and pylons "perform the exact same function." The court also found that the Borough's failure to protect against the dangerous condition was not

9

palpably unreasonable. Finally, the trial court determined the Borough was immune under N.J.S.A. 59:4-5 for failure to provide ordinary traffic markings or devices, and that the Borough was not liable for creating a "trap," under N.J.S.A. 59:4-4.

On July 20, 2020, defendants moved for reconsideration, which the motion court denied. After the entry of the consent judgment that settled all claims with plaintiff, the Board filed this appeal, challenging the dismissal of its third-party complaint and the motion court's refusal to include the Borough on the jury sheet for purposes of allocation of fault.

## II.

### A.

The trial court's interpretation and application of the TCA to undisputed facts is a legal determination that we review de novo. See Jones, 230 N.J. at 153; Parsons v. Mullica Twp. Bd. of Ed., 440 N.J. Super. 79, 83 (App. Div. 2015) ("Our review of the meaning of a statute is de novo, and we owe no deference to the interpretative conclusions reached by the trial court . . . ." (internal citation omitted)).

We review summary judgment decisions de novo using the same standard governing the motion court's decision. RSI Bank v. Providence Mut.

Fire Ins. Co., 234 N.J. 459, 472 (2018) (citing Bhagat v. Bhagat, 217 N.J 22, 38 (2014)). Under that standard, summary judgment will be granted when "the competent evidential materials submitted by the parties, "viewed in the light most favorable to the nonmoving party, shows that there are no "genuine issues of material fact" and that "the moving party is entitled to summary judgment as a matter of law." Grande v. St. Clare's Health Sys., 230 N.J. 1, 24 (2017) (quoting Bhagat, 217 N.J. at 38). If there are no genuine issues of fact, we then decide whether the trial court's ruling on the law was correct. RSI Bank, 234 N.J. at 472 (citations omitted).

B.

The TCA "requires a claimant seeking to file a tort action against a local public entity or public employee to present a tort claims notice informing the entity about the potential claim." H.C. Equities, LP v. Cnty. of Union, 247 N.J. 366, 370 (2021). The claimant must file the notice of claim with the entity within ninety days of the accrual of the claimant's cause of action. N.J.S.A. 59:8-8. The TCA, "however, allows a claimant to apply to a court within one year of the accrual of the claim for leave to file a late notice of claim." H.C. Equities, LP, 247 N.J. at 370. When granting leave to file a late notice of claim, the judge must determine if the claimant has shown "that the

public entity . . . has not been substantially prejudiced by the delay and that extraordinary circumstances[1] justify the failure to timely file."  Ibid.

The failure to file within ninety days, or within one year under extraordinary circumstances, bars the claimant from bringing the tort claim against the public entity.  N.J.S.A. 59:8-8(a).  After the expiration of that one-year period, the court lacks authority to relieve a party from its failure to have filed a notice of claim; consequently, the action at law of a non-compliant party must fail.  See H.C. Equities, LP, 247 N.J. at 383.

A compliant TCA notice of claim must include the following information:

> a) the name and post office address of the claimant;
>
> b) the post-office address to which the person presenting the claim desires notice to be sent;

---

[1]  In 1994, the Legislature replaced its prior standard for motions for leave to file late claims, which required only a showing of "sufficient reasons" for the delay, with the more stringent "sufficient reasons constituting extraordinary circumstances" standard that governs today.  L. 1994, c. 49, § 5; see also, Lowe v. Zarghami, 158 N.J. 606, 625 (1999) (noting that "[t]he Legislature enacted a more demanding standard when the TCA was amended in 1994 . . . .").

c) the date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted;

d) a general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim;

e) the name or names of the public entity, employee or employees causing the injury, damage, or loss, if known; and

f) the amount claimed as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of the computation of the amount claimed.

[N.J.S.A. 59:8-4.]

The notice must be signed, N.J.S.A. 59:8-5, and filed with the public entity, N.J.S.A. 59:8-7. A claimant need not use the public entity's claim form, provided that the claimant sets forth the information required by the TCA. Newberry v. Twp. of Pemberton, 319 N.J. Super. 671, 675 (App. Div. 1999).

"The substantial compliance doctrine operates to prevent barring legitimate claims due to technical defects." H.C. Equities, LP 247 N.J. at 386 (internal quotation marks omitted) (quoting Cnty. of Hudson v. Dep't of Corr.,

208 N.J. 1, 21 (2011)). When deciding a substantial compliance claim, the court considers the following factors:

1) the lack of prejudice to the defending party;

2) a series of steps taken to comply with the statute involved;

3) a general compliance with the purpose of the statute;

4) a reasonable notice of petitioner's claim, and

5) a reasonable explanation why there was not a strict compliance with the statute.

[Galik v. Clara Maass Med. Ctr., 167 N.J. 341, 353 (2001) (quoting Bernstein v. Bd. of Trs., TPAF, 151 N.J. Super. 71, 76-77 (App. Div. 1977)).]

III.

We agree with the motion court's holding that the Board failed to establish substantial compliance with the notice requirements of the TCA. Considering the form and substance of the purported notice in this case, the substantial compliance factors identified in Galik do not support a finding of substantial compliance by the Board.

First, the record does not demonstrate a "lack of prejudice to the defending party," as required by Galik. See 167 N.J. at 353. The letters did not alert the Borough of the claim for contribution the Board would eventually

14

assert in this action. The prejudice to the Borough becomes apparent when plaintiff declined to serve a notice of claim upon the Borough, an indication that plaintiff's investigation failed to reveal a basis for asserting a claim against the Borough.

Second, the record does not demonstrate "a series of steps taken to comply with the statute involved." Ibid. This is not a case in which a claimant attempted to satisfy N.J.S.A. 59:8-7's mandate that it file its claim with the local public entity but fell short of that requirement because of a mistake or technical deficiency. Here, the Board made no effort to file a TCA notice with the Borough, as required by N.J.S.A. 59:8-7.

The third Galik factor, "a general compliance with the purpose of the statute," does not favor a finding of substantial compliance with the TCA by the Board in this case. Ibid. Nor does the fourth Galik factor, "a reasonable notice of petitioner's claim," favor a finding of substantial compliance. Ibid. The August 2, 2018 letter sent by the Board's insurer does not provide any address for Christine McConnachie or her representative. The letter lists the claimant as Christine McConnachie, not the Board, which ultimately became the claimant in its third-party complaint. The letter also does not list an Estate representative as a claimant, which would be typical for a wrongful death

action. Thus, there is a lack of clarity as to the status or identity of any claimant.

In addition, the August 2, 2018 letter does not identify the location of the accident that gives rise to the claim. The letter only refers to an incident at "a well-known, high volume pedestrian area." The letter suggests, but does not state, that the incident involves a motor vehicle and a pedestrian. While the letter indicates the victim sustained fatal injuries, it does not indicate whether the person was hospitalized or whether there was a period of pain and suffering. There is no disclosure of how the Borough or one of its employees may have caused the incident. The deficiencies of the August 2, 2018 letter are too great to support the application of a substantial compliance exception.

Finally, the Board failed to provide a "reasonable explanation why there was not a strict compliance with the statute." Galik, 167 N.J. at 353. In this case, the Board provided no explanation for its failure to comply with the notice provisions of the TCA. The Board was aware it had a potential claim against the Borough – at the very latest – no later than July 8, 2019, the date the Board filed its third-party complaint against the Borough. In fact, the Board reasonably knew of that requirement earlier, on May 23, 2019, when it raised a notice of claim defense in its answer to plaintiff's complaint. At no

16

time did the Board serve or attempt to serve a notice of claim upon the Borough.

In sum, we find no basis to conclude that there was substantial compliance with the notice provisions of the TCA in this case. We therefore hold that the motion court correctly granted the Borough's summary judgment motion and the consequent dismissal of the Board's third-party complaint. In light of the Board's failure to comply with the notice provisions of the TCA, we decline to address the motion court's alternative bases for dismissal.

We further hold that the motion court correctly denied the Board's motion for reconsideration. We agree with the motion court that the Board failed to establish that the court's rulings were "palpably incorrect or that the court failed to appreciate significant probing evidence." The Board's arguments to the contrary lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

As previously noted, our affirmance of the dismissal of the Board's contribution claim renders moot the Board's challenge of the motion court's decision to bar the Board from seeking to have the jury consider the liability of

17

the Borough or allocate fault to the Borough. Nevertheless, we find it appropriate to offer the following comments regarding that decision.[2]

"[T]he plain language of the [TCA] requires an apportionment of fault between tortfeasors, without exception, and regardless of whether a tortfeasor is named as a party in the action." Maison, 245 at 307. The Court explained that "N.J.S.A. 59:9-3.1 provides for apportionment of fault between public-entity and public employee tortfeasors and 'one or more other tortfeasors' – not 'one or more other tortfeasors named as defendants or third-party defendants.'" Ibid.

"The TCA established a comparative-fault scheme, strictly limiting the liability of public entities and public employees to the percentage of fault directly attributable to them." Id. at 306 (citing Frugis v. Bracigliano, 177 N.J. 250, 275-77 (2003)). The TCA includes clear language governing this liability:

> Notwithstanding the provisions of [the Joint Tortfeasors Contribution Law, N.J.S.A. 2A:53A-1 to -5, and the Comparative Negligence Act, N.J.S.A. 2A:15-5.1 to -5.8] or any other law to the contrary, in

---

[2] We note that, at the time of its decision, the motion court did not have the benefit of the Court's decision in Maison v. N.J. Transit Corp., 245 N.J. 270 (2021), which the Court issued more than eighteen months after the rulings under review.

any case where a public entity or public employee acting within the scope of his employment is determined to be a tortfeasor in any cause of action along with one or more other tortfeasors, the public entity or public employee shall be liable for no more than that percentage share of the damages which is equal to the percentage of the negligence attributable to that public entity or public employee and only to the extent authorized by [N.J.S.A. 59:9-2, -4].

[N.J.S.A. 59:9-3.1.]

Addressing N.J.S.A. 59:9-3.1, the Court in Maison held:

The plain language of the statute requires an apportionment of fault between tortfeasors, without exception, and regardless of whether a tortfeasor is named as a party in the action. N.J.S.A. 59:9-3.1 provides for apportionment of fault between public-entity and public employee tortfeasors and "one or more other tortfeasors" – not "one or more other tortfeasors named as defendants or third-party defendants."

[245 N.J. at 307.]

Relevant to the matter under review, the Court added, "To be sure, if in a tort action a defendant public entity or employee intends as a defense to shift blame and allocate fault to another tortfeasor not named in the pleadings,[3] fair notice must be given to the plaintiff to respond to that argument." Ibid. Here,

---

[3] The Board's initial answer did not include the Borough as a party or express any intention to shift blame and allocate fault to the Borough.

the record does not indicate whether the Board provided plaintiff with "fair notice" of its intention to shift blame and allocate fault to the Borough. Regardless, the issue became moot upon the Board's settlement with plaintiff.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1380-20