**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2321-22

WAEL NABELSI,

    Plaintiff-Appellant,

v.

HOLMDEL TOWNSHIP,
KEVIN GALLOGLY,
LINDSAY MEEHAN, and
VINCENT IMPERATO,

    Defendants-Respondents.

_____

Submitted December 3, 2024 – Decided January 6, 2025

Before Judges Smith and Chase.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-4267-21.

Bedi Rindosh, attorneys for appellant (Jason A. Rindosh, on the briefs).

Schwartz & Posnock, attorneys for respondents (David A. Schwartz, on the brief).

PER CURIAM

Plaintiff Wael Nabelsi appeals from a February 22, 2023 order dismissing his complaint against defendants Holmdel Township, Holmdel Police Sergeant Vincent Imperato, Holmdel Patrolman Kevin Gallogly, and Holmdel Municipal Court Administrator Lindsay Meehan for failure to state a claim upon which relief can be granted under Rule 4:6-2(e). We affirm.

I.

On August 22, 2019, plaintiff's then-wife was granted a Temporary Restraining Order ("TRO") pursuant to the Prevention of Domestic Violence Act ("PDVA"), N.J.S.A. 2C:25-1 to -53. Among other things, the TRO barred plaintiff from "making or causing anyone else to make harassing communications" to his wife and denied him any parenting time or visitation until further order of the court (emphasis added). The TRO also placed plaintiff on notice that violation of any of its provisions may result in his arrest.

The day after she obtained the TRO, plaintiff's wife called Holmdel police to the marital residence. She reported receiving a phone call from a man claiming to be plaintiff's attorney who informed her that plaintiff wanted to see their children before the upcoming hearing. The responding officer, Sergeant Vincent Imperato, contacted plaintiff by phone and asked him to come to police headquarters. Plaintiff refused and directed Sergeant Imperato to his attorney.

2

Plaintiff then declined to answer further questions from the sergeant, including whether plaintiff directed his attorney to contact his wife. Sergeant Imperato attempted to contact plaintiff's attorney unsuccessfully, and plaintiff refused to tell the officer where he currently lived.

Sergeant Imperato next completed a warrant application for plaintiff for contempt of court, N.J.S.A. 2C:29-9(b)(2), alleging plaintiff "knowingly violate[d] a provision in an order entered under the provisions of the [PDVA]. Specifically[,] by a third party, his attorney, contacting the victim by phone attempting to allow child visitation before the final restraining order hearing." Defendant Lindsay Meehan, as a judicial officer, found probable cause, and an arrest warrant issued.

On August 27, plaintiff arrived at Holmdel police headquarters to request an officer accompany him to the marital home so he could retrieve some belongings. The police conducted a record check, which revealed an active arrest warrant outstanding against plaintiff. Plaintiff was arrested. Plaintiff's complaint claims Officer Kevin Gallogly then told him he hired the "wrong attorney."

At approximately 12:30 p.m., Meehan told Gallogly's supervising officer to release plaintiff after learning that the Monmouth County Prosecutor's Office

3

("MCPO") intended to administratively dismiss the complaint for contempt. Plaintiff was released, and Patrolman Gallogly accompanied him to the marital home to retrieve his belongings. That afternoon, Meehan confirmed dismissal of the contempt complaint with the MCPO.

The next day, Meehan wrote plaintiff stating the municipal court would not proceed with the contempt charge. Meehan's subsequent dismissal letter stated in pertinent part:

> We were able to get this deleted from the system so it will not be on your record, not even as a dismissal. I have attached a copy of the letter which was remanded to me this morning before the complaint was deleted. Note the letter states 'defendant has not been arrested.' Although you were taken to the Holmdel police station, you were not brought out and processed at the Monmouth County Correctional Institution which is what that is referring to.

The MCPO's dismissal letter noted the matter has been administratively dismissed, stating, "all records should be adjusted accordingly including the withdrawing of any warrants pertaining to these charges." At the bottom of the page, the letter also stated, "DEFENDANT HAS NOT BEEN ARRESTED."

In January 2020, plaintiff underwent an employment-related background check, which revealed the arrest. His prospective employer's human resources department informed him of the result. The next day, plaintiff contacted the

4

Holmdel police department, seeking instruction on how to remove the arrest from his records "as [he] wasn't arrested and never violated the law." Support Services Commander Lieutenant Jeffrey Ackerson responded and clarified plaintiff was, in fact, arrested and fingerprinted "as part of the arrest processing procedure." Ackerson informed plaintiff he would need to apply for expungement to have the charge removed and provided plaintiff with a link to the application.

Plaintiff filed a Notice of Tort Claim with Holmdel, within ninety days after notification of the arrest by his prospective employer, but more than seven months after the actual arrest.

Plaintiff then filed a thirteen-count complaint in Federal court, alleging both Federal and state constitutional claims as well as common-law tort claims. Defendants moved to dismiss the complaint in its entirety. Plaintiff then cross-moved for a declaration that his notice of tort claim was timely filed or, in the alternative, an extension of the deadline to serve the notice under N.J.S.A. 59:8-9. The Federal court dismissed all plaintiff's claims.

Plaintiff next filed a complaint in Superior Court and brought eleven counts,[1] including: Count One, "Constitutional Violations Actionable Under the New Jersey Civil Rights Act ("NJCRA")"; Count Two, "False Arrest and False Imprisonment under NJCRA and Common Law"; Count Three, "Violation of Due Process under New Jersey [S]tate [C]onstitution only"; and Count Seven, "False Light."

In lieu of an answer, defendants moved for dismissal under Rule 4:6-2(e). On February 22, 2023, the trial court entered an order dismissing with prejudice the counts for violation of NJCRA, constitutional and common-law false arrest, violation of due process under the State Constitution, and false light. The court also dismissed all claims as to defendant Meehan with prejudice.

In its written statement of reasons, the court first found judicial immunity extended to Meehan under N.J.S.A. 59:3-8. It then found plaintiff's constitutional claim for unlawful seizure fell "woefully short" of the conscience-shocking standard required to sustain a civil rights claim, finding "nothing about his brief detention [was] egregious." The court then found plaintiff's false arrest claim accrued on the date of his arrest and determined his TCA notice was filed

---

[1] Plaintiff voluntarily dismissed via stipulation several counts of his complaint. Only those counts plaintiff seeks to have reinstated are discussed.

A-2321-22

outside of the statutory ninety-day window.  For the sake of completeness, the court held even if his notice had been timely filed, or an extension had been sought and granted, his false arrest claim would fail because the warrant was facially valid.  The court rejected plaintiff's attack on the underlying probable cause, finding he had not alleged Imperato knowingly and recklessly disregarded the truth before swearing to the arrest warrant.

As to Count Three, plaintiff's state-based Miranda[2] claim, the court found the phone call from Imperato was not a custodial interrogation.  Further, the court held Miranda rights involve procedural safeguards, not substantive rights, and so the NJCRA could not be invoked as a basis for his claim.  As to plaintiff's false light claim, the court found the information on the background check reflecting the August 2019 arrest could not sustain his claim, as plaintiff had failed to allege the essential element of falsity.  The court also found the statutory threshold of N.J.S.A. 59:9-2(d) was a substantive pleading requirement of all plaintiff's tort claims, and failure to allege such damages required dismissal of those claims.

This appeal followed, in which plaintiff requests Counts One, Two, Three, and Seven of his complaint be reinstated.  He argues:  (1) The New Jersey

---

[2]  Miranda v. Arizona, 384 U.S. 436 (1966).

A-2321-22

Constitution offers broader protections of individual liberty than the Federal Constitution; (2) plaintiff's right to be free from unreasonable searches and seizures under the state constitution were violated; (3) plaintiff's substantive rights under state law and the state constitution were violated by the investigation; (4) plaintiff's broader due process rights protecting his good name and reputation under the state constitution were violated; (5) [Meehan] should not receive absolute immunity; (6) [Plaintiff's] notice of tort claim was timely; (7) plaintiff was not required to plead damages that exceeded the Tort Claims Act's $3,600 medical expense threshold; (8) a false arrest causing harm to an individual's reputation should be exempt from the Tort Claims Act; and (9) plaintiff's complaint is factually and legally sufficient.[3]

## II.

"Rule 4:6-2(e) motions to dismiss for failure to state a claim upon which relief can be granted are reviewed de novo." Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (citing Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019)). In considering a Rule 4:6-2(e) motion, "[a] reviewing court must examine 'the legal sufficiency

---

[3] For clarity, these points are consolidated and reordered in this opinion.

of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'" Ibid. The test for determining the adequacy of a pleading is "whether a cause of action is 'suggested' by the facts." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)). At this preliminary stage of the litigation, the court is not concerned with a plaintiff's ability to prove its case. Leon v. Rite Aid Corp., 340 N.J. Super. 462, 466 (App. Div. 2001).

## III.

## A.

Plaintiff first argues Meehan should not have been afforded judicial immunity for her actions authorizing his arrest warrant. He maintains her role in plaintiff's arrest did not involve the traditional discretionary decision-making functions of a judge, because as a non-attorney, she was not qualified to "vet whether the warrant application was supported by probable cause."

The doctrine of judicial immunity "recognizes that judges must be free from the threat of civil suit in order to discharge their judicial functions with the independence required by the public interest [that] has been consistently adhered to by the courts of this State since [Little v. Moore, 4 N.J.L. 82 (Sup. Ct.

1818).]." Cashen v. Spann, 66 N.J. 541, 546 (1975).  The rule is "as thoroughly established as are any other of the primary maxims of the law."  Bedrock Found. Inc., v. George H. Brewster & Son, Inc., 31 N.J. 124, 140 (1959).

The principle is also codified in the Tort Claims Act ("TCA"), which states public employees are immune from liability for injuries resulting from "the exercise of judgment or discretion" or for "judicial action or inaction, or administrative action or inaction of a . . . judicial nature[.]"  N.J.S.A. 59:3-2(a); -2(b).  Additionally, the TCA provides public employees are "not liable for injury caused by [their] instituting or prosecuting any judicial or administrative proceeding within the scope of [their] employment."  N.J.S.A. 59:3-8.[4]

The Legislature has authorized municipal court administrators to "exercise the power of the municipal court to administer oaths for complaints filed with the municipal court and to issue warrants and summonses."  N.J.S.A. 2B:12-21.  Additionally, Rule 7:2-1 defines those able to sign a warrant after a

---

[4] The companion provision of the TCA similarly immunizes the entity from liability for discretionary acts, judicial action or inaction, or administrative action or inaction of a judicial nature.  N.J.S.A. 59:2-3(a); -3(b).  Therefore, Meehan's probable cause determination cannot form the basis for any liability to attach to the township.

probable cause determination as "a judge, <u>authorized municipal court administrator</u>[,] or deputy court administrator."   <u>R.</u> 7:2-1(d)(1) (emphasis added).

Meehan acted as a judicial officer when making the probable cause determination based on the factual recitations in plaintiff's application.  The fact that she is not an attorney, is not a basis to challenge her statutory authority to make a probable cause determination.  The court's dismissal of claims against Meehan for her probable cause determination was proper.

However, judicial immunity does not protect Meehan from liability for her non-judicial actions, such as communicating with plaintiff about the status of his arrest record.  Under the TCA, public employees "acting in the scope of [their] employment [are] not held liable for an injury caused by [their] misrepresentation." N.J.S.A. 59:3-10.  The TCA also limits employee immunity to exclude circumstances "outside the scope of [the employee's] employment" or those which constitute "a crime, actual fraud, actual malice[,] or willful misconduct." N.J.S.A. 59:3-14.  The record shows the letter stating plaintiff had not been arrested was generated by the MCPO.  Meehan merely forwarded the letter.  Giving all inferences to plaintiff, the complaint fails to allege crime, fraud, or malice on Meehan's part.

The TCA does not govern the viability of plaintiff's claims brought under the NJCRA. See Owens v. Feigin, 194 N.J. 607, 609 (2008) (TCA notice requirement not applicable to NJCRA claims); Greenway Dev. Co. v. Borough of Paramus, 163 N.J. 546, 558 (2000) ("A public entity may not use a state statute, such as the TCA, to abrogate a claimant's constitutional rights."). An NJCRA claim requires plaintiff to: (1) "identify the state actor, 'the person acting under the color of law,' that has caused the alleged deprivation" and (2) "identify a 'right, privilege or immunity' secured to the claimant by the Constitution[.]" Rivkin v. Dover Twp. Rent Leveling Bd., 143 N.J. 352, 363 (1996) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). The NJCRA is not itself a cause of action, but rather a statutory mechanism permitting civil suit against certain actors for violations of substantive state constitutional rights. See Gormley v. Wood-El, 218 N.J. 72, 98 (2014) (explaining that the NJCRA "is not a source of rights itself").

Plaintiff's failure to plead a causal nexus between Meehan's emails and his injury is fatal to his constitutional claims. Nowhere in the complaint does plaintiff allege that Meehan's post-arrest email correspondence "caused the alleged deprivation" of his rights. Similarly, any alleged injury to plaintiff's

12

good name and reputation stems from his arrest and fingerprinting, not from Meehan's emails. The trial court's dismissal of counts one and two was proper.

B.

Plaintiff next argues his right against self-incrimination was violated because Imperato failed to inform him he was a suspect in an ongoing investigation or provide Miranda warnings. He argues that N.J.S.A. 2A:84A-19 provides constitutional protection broader than the Fifth Amendment and Miranda. According to plaintiff, the trial court "failed to consider [his] pre-custodial statutory rights against self-incrimination" as guaranteed by state law.

"Our State Constitution does not contain a parallel provision to the Fifth Amendment right against self-incrimination, but the privilege is firmly established in this state's common law and is codified in statute and in the Rules of Evidence." State v. Knight, 256 N.J. 404, 417 (2024). "Its importance is not diminished by the lack of specific constitutional articulation." State v. P.Z., 152 N.J. 86, 101 (1997).

N.J.S.A. 2A:84A-19 provides, subject to enumerated exceptions, "every natural person has a right to refuse to disclose in an action or to a police officer or any official any matter that will incriminate him or expose him to a penalty[.]" See also N.J.R.E. 503 (same); N.J.S.A. 2A:84A-18 (defining "incrimination");

13

N.J.R.E. 502 (same). The right "applies only when the accused is <u>compelled</u> to make a testimonial communication that is incriminating." <u>Knight</u>, 256 N.J. at 417-18 (emphasis added) (citing <u>Fisher v. United States</u>, 425 U.S. 391, 408 (1976)).

"The defining event triggering the need to give <u>Miranda</u> warnings is custody, not police suspicions concerning an individual's possible role in a crime." <u>State v. Nyhammer</u>, 197 N.J. 383, 406 (2009). The warnings are not implicated "where the restriction on a defendant's freedom is not of such significance as to compel conclusion that his liberty is restrained." <u>State v. Smith</u>, 307 N.J. Super. 1, 9 (App. Div. 1997).

Plaintiff has not alleged that his liberty was restrained, or that his freedom was restricted by Imperato's call. The record contains no facts which suggest otherwise. Plaintiff was free to terminate the phone call with the officer at will, and in fact did so. Per <u>Nyhammer</u>, his "suspect status" was not sufficient to trigger the need for Officer Imperato to administer warnings related to his right against self-incrimination. 197 N.J. at 407. Therefore, count three was appropriately dismissed.

C.

Plaintiff also argues the trial court erred in finding his notice of tort claim untimely. He contends the discovery rule should have tolled the date of accrual to January 2020, when he learned of the arrest record via the employment background check. He cites McDade v. Siazon, 208 N.J. 463, 474-75 (2011), to support the proposition.

The TCA requires a claimant to furnish a public entity defendant with notice of the claim no later than ninety days after the cause of action accrues. N.J.S.A. 59:8-8. Before determining the timeliness of a notice, "a court must determine the date on which the claim accrued." Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 133-34 (2017).

> A claim accrues on the date of the accident or incident that gives rise to any injury, however slight, that would be actionable if inflicted by a private citizen. If an injured person is unaware that he or she has been injured or that a particular third party is responsible, the discovery rule tolls the date of accrual.
>
> [Beauchamp v. Amedio, 164 N.J. 111, 123 (2000).]

"The basis for a claim of false arrest arises at the time the incident occurs, i.e., the time of arrest," for purposes of determining date of accrual of claim. Bayer v. Twp. of Union, 414 N.J. Super. 238, 258 (App. Div. 2010) (internal

quotation marks omitted) (quoting <u>Bauer v. Borough of Cliffside Park</u>, 225 N.J. Super. 38, 47 (App. Div. 1988)).

When a party does not know of an injury, or the identity of the party responsible for it, the discovery rule may toll the notice requirement of the TCA. <u>Ben Elazar</u>, 230 N.J. at 135. "Whether the discovery rule applies depends on 'whether the facts presented would alert a reasonable person, exercising ordinary diligence, that he or she was injured due to the fault of another.'" <u>Id.</u> at 134 (quoting <u>Caravaggio v. D'Agostini</u>, 166 N.J. 237, 246 (2001)). The question is "whether plaintiff 'knew or should have known' of sufficient facts to start the statute of limitations running." <u>Ibid.</u> (quoting <u>Caravaggio</u>, 166 N.J. at 246). "Once a claim accrues and the ninety[-]day period has elapsed, the only exception to the notice requirement is where extraordinary circumstances exist that justify late filing." <u>Beauchamp</u>, 164 N.J. at 123.

Dismissal of claims is appropriate where "plaintiffs declined to invoke the statutory procedure by which a court determines whether the late filing of a notice of claim can be excused." <u>McDade</u>, 208 N.J. at 469. "[T]he filing of 'a late notice of claim with an entity without leave of court is a nullity and does not constitute substantial compliance with the terms of [N.J.S.A. 59:8–9].'" <u>Rogers v. Cape May Cnty. Office of Pub. Def.</u>, 208 N.J. 414, 427 (2011)

(quoting Margolis & Novack, Claims Against Public Entities, comment on N.J.S.A. 59:8–9 (2011)).

Here, plaintiff had sufficient facts to alert him to the basis for his common-law false arrest claim on the date of the arrest itself, when he was handcuffed and detained, suffering what he alleged to be a deprivation of liberty. This is true whether he believed the incident was an actual arrest made unlawful by a lack of a valid warrant, a lack of probable cause to support a warrant, or another type of unlawful detention. This understanding is reflected in plaintiff's alternative pleadings in the complaint:

> 44. As a result of the constitutional violations by Defendant Gallogly, Defendant Imperato and/or Defendant Doe, [plaintiff] was arrested pursuant to complaint-warrant W20190002571318.
>
> 45. In the alternative, there was no warrant for [plaintiff's] arrest and the arresting officer negligently, recklessly, and/or intentionally arrested [plaintiff] without probable cause.
>
> 46. To the extent Defendant's claim [plaintiff] was not arrested, [plaintiff] was seized as a matter of law.
>
> 47. [Plaintiff] suffered a deprivation of liberty.

A plain reading of plaintiff's complaint shows his false arrest claim accrued on August 27, 2019. It follows that the notice filed on April 6, 2020, was untimely as to that claim. It is undisputed that when plaintiff submitted his

17

notice of tort claim to Holmdel, he had no permission from any court to do so. Instead, in May 2020, he filed a cross-motion to deem his late notice timely in Federal court. Under Rogers, the untimely notice filed in April 2020 as to the false arrest claim was a legal nullity and cannot serve as a basis to find compliance under N.J.S.A. 59:8-9. McDade, on which plaintiff relies, also compels a decision in defendants' favor on this issue, because plaintiff declined to follow the statutorily required process.

Therefore, even if the probable cause determination did not defeat his false arrest claim, failure to comply with the Tort Claims Act's notice requirements mandates dismissal of this claim. Again, the trial court's dismissal was proper.

D.

The background check forms the factual basis for plaintiff's claim for false light, hence the discovery rule operates to toll that claim. Giving all inferences to plaintiff, the record shows plaintiff did not learn of the continued existence of his arrest record until January 2020, and a person exercising reasonable diligence likely would have relied on the MCPO letter and defendant Meehan's emails to believe such a record did not exist. It follows that the ninety-day notice clock started to run on January 20, 2020, when plaintiff learned the results

18

of the background check. His April 2020 notice was thus timely as to Count Seven, the false light claim.

To analyze plaintiff's false light claim, we consider two elements: "(1) 'the false light in which the other was placed would be highly offensive to a reasonable person'; and (2) 'the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.'" Leang v. Jersey City Bd. of Educ., 198 N.J. 557, 589 (2009) (quoting Romaine v. Kallinger, 109 N.J. 282, 294 (1988)). "[A] false-light claim requires that the offending party make 'a major misrepresentation of plaintiff's character, history, activities, or beliefs.'" G.D. v. Kenny, 205 N.J. 275, 308 (2011) (quoting Romaine, 109 N.J. at 295). Fundamentally, this requires "that the disputed publicity be in fact false, or else at least have the capacity to give rise to a false public impression as to the plaintiff." Ibid. (internal quotation marks and citation omitted).

Here, plaintiff has failed to identify the statements which, according to his complaint, "falsely represented [plaintiff] and his criminal history" and "are accessible to prospective employers." As the complaint concedes, plaintiff "was fingerprinted as part of the arresting process" which "created a permanent record of the arrest." Therefore, even though the arrest record constitutes a statement,

19

it contained no falsehood. The report accurately reflected the date of the offense, the date of the arrest, Holmdel Police Department as the arresting agency, and the contempt statute. It also reflected that plaintiff had no history of pre-trial intervention, conditional discharge, indictable convictions, or violations of probation, and no Department of Corrections data. As the Court in G.D. noted, when disposing of a false light claim, it is "essentially the same" as a defamation claim, "[t]ruth may be personally embarrassing and offensive to some, but it remains a defense [to both claims]." 205 N.J. at 308. As such, the trial court properly dismissed Count Seven.

To the extent we have not specifically addressed any remaining arguments, it is because we find them to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(e).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2321-22